SULLIVAN v. STATE.

(Division B. Dec. 9, 1929.)

[125 So. 115. No. 27965.]

J. W. Cassedy, Jr., and H. M. McIntosh, of Collins for appellant.

**Forrest B. Jackson,** Assistant Attorney-General, for the state.

Argued orally by **James W. Cassedy**, for appellant, and by **Forrest .B. Jackson**, Assistant Attorney-General, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Dewey Sullivan, was indicted and tried on a charge of murdering one George Smith, and convicted of murder, and sentenced to the state penitentiary for life.

The principal assignment of error is that the court erred in sustaining a challenge for cause to one of the jurors, H. H. Langford, who had been accepted and sworn to try the case with eleven others; but before the taking of any evidence the state discovered that there was some question as to whether the juror was a qualified elector. The twelve jurors had been accepted and sworn on Saturday, and the court had adjourned until Monday, but no testimony had been taken, and the district attorney asked the court to inquire into whether the juror

Langford was disqualified, by reason of failure to pay his taxes on or before the 1st day of February. The trial was held in February, but at a later date than the 1st. On this inquiry it developed that the juror Langford had requested another person who owed him money for services rendered to pay his taxes, and that such person had agreed to do so, and told Langford that he had done so, but he had given a check to the sheriff in a blank amount to be filled in with the amount of the taxes of the person giving the check, Langford, and another person. This check was dated on the 31st day of January, 1929, and was accepted by the sheriff, but no tax receipt had been issued, and the check had never been filled in and presented to the bank for payment. The sheriff testified that he accepted the check in lieu of cash, and that he thought the defendant ought to be given advantage of the payment; that he had made his settlement for January, but had not made his settlement for February, and the check would be filled out and cashed during February and included in that settlement. The person giving the check testified that he had arranged with the bank on which it was given, situated at the county site, for the payment of the check, and that it would be paid on presentment. During the trial the sheriff detached the tax receipt which had never been taken from the books of the sheriff's office, and presented it in court, being willing to act upon the check. The court, after hearing the testimony, sustained the challenge for cause and stood the juror aside over the objection of the appellant.

The appellant then made a motion that the jury be discharged, and a new jury impaneled, and that he be allowed to exercise his full number of peremptory challenges, which motion was overruled.

Appellant then filed a motion to be allowed to exercise his remaining peremptory challenges on any of the jurors in the panel that he desired to use them on, or any other jurors subsequently impaneled, which motion was overruled and exception taken.

Appellant then asked for the right to exercise twelve peremptory challenges upon such jurors as were thereafter called, which motion was also overruled and exception taken.

Appellant then moved that a special venire be drawn from which to complete the jury, which was also overruled and exception taken. He thereupon moved that the jurors be selected from bystanders, and it appeared that during the preceding week the venire had been exhausted, likewise juries for that week, and some bystanders were called. On Monday morning the court had a jury for that week in attendance upon court who had regularly been sworn and qualified as jurors for the week. The court took the position that juries should be completed from this regular list of jurors, and overruled the motion to select from the bystanders, to which exception was taken. These several rulings are assigned as error, and it is insisted by the appellant that there is no statute applicable, and that the course of common law prevails; and that, under the common law, in such cases it was required to proceed de novo and allow the appellant the full amount or number of his peremptory challenges, and start a new impaneling of a jury; and that he was entitled, under the law of this state, to have a full jury accepted by the state and passed to him for acceptance before he was required to exercise his peremptory challenges.

It appears from the record that the matter stood in this way: Both the state and the defendant had accepted the twelve jurors on Saturday afternoon; on Monday morning it was discovered by the state, as above stated, that some question existed as to the qualification of the juror Langford for the reason above set out; and that motion, as stated, was sustained. There is no showing in the record that there was any sound objection to the other eleven jurors constituting the panel, and the question turns upon the right claimed by the appellant upon

the technical right to have a new jury impaneled, or starting of the impaneling of the jury de novo.

In the case of Mabry v. State, 71 Miss. 716, 14 So. 267, in the fourth syllabus it is stated: "If any doubt arises as to the competency of a juror, he should be excluded. The court has the discretion to do this at any time before evidence is submitted." In the opinion delivered by Chief Justice CAMPBELL it is said:

"The juror, Shoemaker, did not come up to the constitutional requirement. He was not a qualified juror, for he could not write and read any section of the constitution. He was a registered voter, it is true, but that does not satisfy the constitution, which declares that 'no person shall be a grand or petit juror unless a qualified elector, and able to read and write' (section 264); and by section 244 it provides that every elector shall 'be able to read any section of the constitution of this state,' thereby prescribing the standard of capacity to read, so that it is not left uncertain what is meant by 'able to read,' as used in section 264. Section 2354, Code 1892, in prescribing who are competent jurors, makes a 'duly registered' voter the equivalent of a qualified elector, and is in this unconstitutional, as we have shown in several decisions during this term, since one may be duly registered, and not be a qualified elector.

"It is unnecessary now to decide the effect of the offer of the district attorney to the counsel of the defendant to excuse Shoemaker after he had been seated in the jury box. If any doubt arose as to the competency of the juror, the court should have set him aside, as it had full power to do without error, at any time before evidence was submitted."

We think under this authority the action of the court in the present case was not reversible error, and we do this with the assumption that the juror was in fact a qualified elector. The power to stand jurors aside after they have been accepted should be exercised with due

caution, but whenever there is adequate reason for so doing, and where there is no error or harm apparent from the record resulting therefrom, this court will not interfere with the discretion of the trial judge in his rulings.

By section 2365 of Hemingway's 1927 Code (section 2718 of the Code of 1906), the provisions of law in relation to the listing, drawing, summoning, and impaneling jurors are directory, and by section 2331 of Hemingway's 1927 Code (section 2685, Code of 1906), in the concluding part of the section, it is provided: ''But any juror shall be excluded, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error.'' It is true that the body of the section deals with jurors who have an impression as to the guilt or innocence of the accused, and by the section the court is made the judge of that question in so far as excusing jurors is concerned. A litigant has not a vested right in a particular juror, but only a right to be tried by a fair and impartial jury qualified under the law. It is expressly provided in section 264 of the Constitution that the want of the qualification there prescribed shall not vitiate any verdict of the petit jury or an indictment found by the grand jury, the jury laws being directory in this state when not radically departed from. We think the court, in standing the juror Langford aside, or sustaining the challenge, was acting upon a question where different reasonable conclusions might be reached as to the qualification of the jurors, and there is nothing to suggest that the judge desired anything other than to secure to the defendant that fair and impartial trial accorded to him by the law. It certainly was not reversible error to do so in this case, and this assignment is without merit.

It is next assigned for error that the court erred in permitting the state witness Add Brown to explain his absence from the court at a former term at which the

case had been tried. This objection and assignment arises upon the following questions and answers:

"Q. Add, was you here last court at the time this case was to be tried? A. No, sir.

"Q. Where was you? A. On the Coast.

"Q. How come you not to appear here at court? (Objection; overruled; exception.) A. I wasn't summoned last court.

"Q. I mean the time it was tried? A. The time it was tried, I don't know, I was gone.

"Q. It was tried in July, 1927. A. I was in Louisiana.

"Q. How come you to leave? A. I was drummed out. A crowd of white folks got after me, and drove me through Magee and Mendenhall—got over there the other side of Mendenhall at a filling station and I went on from there to Louisiana.

"Q. How long did you stay with that bunch? When did they let you loose? A. On the other side of Mendenhall, over there where the road forks.

"Q. Do you see any of those folks here? A. No, sir.

"Q. Would you know them if you were to see them? A. Yes, sir.

"Q. You haven't seen any of them here today? A. No, sir.

"Q. You know Mr. Sullivan? A. Yes, sir.

"Q. You know his brothers? A. Yes, sir.

"Q. It wasn't any of them? A. No, sir.

"Q. You know Mr. Tew, Mr. McLeod and myself? A. Yes, sir.

"Q. It wasn't any of them? A. No, sir.

"Q. You just told the court you would know them if you were to see them, is that it? A. Yes, sir.

"Q. That is the somebody that told you something about leaving here? A. Yes, sir.

"Q. And that is as near as you can advise the court about it? A. Yes, sir, all I know is they were white folks."

It therefore appears from the questions and answers of the witness that the appellant and his relatives and his counsel were not influential in running the witness away from the court. It was imprudent on the part of the state to introduce this testimony to account for the absence of the witness, but we do not think it warrants a reversal of the judgment of conviction. It affirmatively appears that the defendant and his relatives had nothing to do with it, and it would not have a prejudicial effect upon them unless there was some showing that somebody, in the interest or on behalf of the defendant, did it. There are many reasons why other people might have run this negro out of town, and the mere fact that he was run out of town, and that was shown, should not reverse the judgment where it affirmatively appears that the defendant, his relatives, and friends had nothing to do with it, and the jury in the present case was so informed.

It is next assigned for error that in his argument the district attorney made the following statement: ''I am expecting a verdict of guilty in this case, I am expecting it right off the reel and so does everybody else who heard it.'' The special bill of exceptions shows that the district attorney stated to the court in the bill of exceptions that the argument he is reputed to have made, which constitutes this special bill of exceptions, was made by him in answer to the argument of the counsel, which argument of counsel for the defendant was to the effect that there were three links in the chain of testimony, and how could the jury justify their verdict before the people if these three links were hung on the courthouse walls, and the strongest link of the testimony was that of Add Brown. We do not think the comment on such matter under the circumstances was prejudicial to the extent that the judgment should be reversed. Counsel is allowed considerable latitude in making their arguments. It appears from the district attorney's statement approved

by the court that counsel had made an argument as to how could the jury justify the verdict depending upon the evidence in the public mind, and the district attorney was replying to it. Counsel for the appellant complied with the holdings of this court in requesting that the jury be discharged and a mistrial entered, but we do not think the assignment predicated upon this argument merits the reversal of the judgment.

We find no other reversible error in the record, and .consequently the judgment of conviction will be affirmed.

Affirmed.