STATE OF NEVADA, Petitioner, v. SECOND JUDICIAL
DISTRICT COURT OF THE STATE OF NEVADA
IN AND FOR THE COUNTY OF WASHOE, THE HONORABLE
THOMAS O. CRAVEN, A DISTRICT JUDGE THEREOF,
RESPONDENTS.

No. 5758

April 22, 1969                                453 P.2d 421

*Harvey Dickerson,* Attorney General, and *Daniel R. Walsh,*
Chief Deputy Attorney General, for Petitioner.

*John C. Renshaw* and *James J. Halley,* of Reno, for
Respondents.

**OPINION**

By the Court, COLLINS, C. J.:

The State of Nevada seeks to prohibit the enforcement of an order of the Second Judicial District Court requiring the state controller to draw and the state treasurer to pay a warrant to two court-appointed counsel for $750 for preliminary fees and expenses of an investigator to aid them in preparing the defense of an indigent accused murderer. We conclude the Petition for a Writ of Prohibition is proper; that the order exceeded the court's jurisdiction, and direct the writ to issue.

The district judge in entering the order found there was a need by defendant for an investigator to insure adequate preparation and investigation of the charged capital offense; that the court had inherent power to allow reasonable fees and expenses of an investigator; that the sum of $750 was a reasonable amount for the purpose; that the expenses were an unreasonable burden upon Washoe County and should be borne not by one county but by the citizens of the State of Nevada.

The questions presented in this case are fraught with serious and far reaching questions of constitutional law and public policy.

Reduced to its utmost simplicity, the reason for our holding is that the district court had no power to order payment of the item in question by the state controller and treasurer because there was no legislative appropriation for such expense.

1. Article 4, Sec. 19, of the Nevada Constitution provides that, "no money shall be drawn from the treasury but in consequence of appropriations made by law." In addition, the statutes clearly indicate that payment is not to be made by the state treasurer except where authorized by law and where an appropriation has been made for such claim.

NRS 227.160(2) provides that no claim for services or advances shall be audited or allowed by the state controller unless they shall have been specially authorized by law and an appropriation made for its payment.

NRS 227.170(1) provides that the controller shall draw all

warrants upon the treasury for money and each warrant shall express in the body thereof the particular fund out of which it is to be paid and the appropriation under which it is drawn.

NRS 227.330 provides that if the controller shall willfully neglect or refuse to perform any duty enjoined by law or by color of office knowingly do any act not authorized by law, he shall be guilty of a misdemeanor. NRS 226.230 provides similar penalties for the state treasurer should he knowingly do any act not authorized by law.

There appears to be no such appropriation for the claim in question unless one can say that the claim can be paid from the general fund under NRS 353.350, which states that, "the general fund is designated to receive all revenues and account for all expenditures not otherwise provided for by law in any other fund."

However, the case of State v. Eggers, 29 Nev. 469, 91 P. 819 (1907), precludes the payment of these expenses from the general fund. In Eggers this court held there must be a statute indicating the legislative intent to authorize the expenditure and fixing a maximum amount to be paid. Specifically, the court said, at page 484:

"As all appropriations must be within the legislative will, it is essential to have the amount of the appropriation, or the maximum sum from which the expenses could be paid, stated. This legislative power cannot be delegated nor left to the recipient to command from the state treasury sums to any unlimited amount for which he might file claims." See also State v. La Grave, 23 Nev. 25, 41 P. 1075 (1895), and Crane v. Frohmiller, 45 P.2d 955 (Ariz. 1935). Here, there is no indication or reference to any such statute enacted by the legislature indicating an intent to authorize the expenditure or fixing the maximum amount to be paid from state funds.

But respondents contend there need be no statute authorizing payment because the court, even in the absence of a legislative appropriation, may order the payment because of the constitutional right of the indigent defendant or his court-appointed counsel.

2. Do the constitutional rights of the accused require that court-appointed counsel be reimbursed for out-of-pocket expenses in representing his client? We feel that they do.

In State v. District Court, 80 Nev. 478, 396 P.2d 680 (1964), this court said, in requiring Clark County to provide

an indigent defendant with a copy of a transcript of the evidence at his first trial, which ended in a hung jury, for use of his counsel at the second trial:

"However, we wish to mention that in this case the judicial power to make the order in question does not rest primarily upon the statutory provisions which we have related. The demands of the due process and equal protection clauses of the fourteenth amendment to the federal constitution compel that a copy of the transcript of the first trial be furnished Harris. The mentioned statutes merely implement the constitutional mandate." Likewise, in the case of Spillers v. State, 84 Nev. 23, 436 P.2d 18 (1968), this court, in considering whether the lower court erred in refusing to allow funds for an expert witness and additional discovery, held that "upon a showing of need the court may order provision be made for necessary witnesses or evidence. . . ."

Other states have considered the constitutional right of an indigent defendant to reimbursement of his counsel for out-of-pocket expenses. In State v. Horton, 170 A.2d 1 (N.J. 1961), in interpreting a statute which provided for "reasonable compensation" to court-appointed counsel "in all cases of murder," the Supreme Court of New Jersey went beyond the limitation of the statute to murder cases and said:

"A word should be said about the matter of out-of-pocket expenses of defense, including expenditures of the assigned attorney himself. Customarily, and we think properly so, the reasonable costs of necessary items such as experts, whether witnesses or not, medical examinations, scientific tests, photographs, depositions and transcripts, and, *in essential circumstances, professional investigation,* have been ordered paid from public funds by trial courts. The constitutional obligation to furnish counsel to an indigent can sensibly only be construed to include as well that which is necessary to proper defense in addition to the time and professional efforts of an attorney and we have no doubt of the inherent power of a court to require such to be provided at public expense. . . . While we are dealing in the instant case strictly with a situation where compensation to the attorney is authorized, we believe that what we just said as to both major expenses of defense and miscellaneous disbursements of attorneys should have *equal application where counsel is assigned to an indigent defendant charged with other than murder.* Since this has not been the general practice in non-murder cases, at least as to attorneys' disbursements, the view just expressed should be considered as prospective only." (Emphasis added.)

In a follow-up opinion by that court on the same issue in State v. Rush, 217 A.2d 441 (N.J. 1966), it held:

"We dealt with that subject [i.e., reimbursement for out-of-pocket expenses] in State v. Horton . . . . We there said that counsel is entitled to reimbursement as to such items (with a caveat that advance authorization should be sought as to some), and that such reimbursement should also be made in 'non-murder' cases.

. . . . .

"We intended our view to be effective at once although not to be applied to past transactions. The adoption of a formal rule was not in mind. Nor was one necessary. *The obligation of the State to provide the indigent with the means for an appropriate defense rises from an interplay of the constitutional rights to counsel, to fair trial, and to equality before the law."* See also People v. Watson, 221 N.E.2d 645 (Ill. 1966).

There is major authority holding a contrary view (see State v. Superior Court, 409 P.2d 742 (Ariz.App. 1966); 21 A.L.R.3rd 819, and cases cited therein); but this court is committed toward a different view, and properly so.

3. Holding, as we do, that an indigent defendant's constitutional rights require reimbursement to his counsel for out-of-pocket expenses incidental to his defense, the trial courts have the inherent right to entertain motions seeking such allowances and to order payment of such reasonable amounts as they, in their discretion, deem proper and necessary. While the district court may not require payment by the state for the reasons above noted, it may require payment by the various counties.

The legislature has recognized its constitutional obligation, and while not appropriating state funds for these expenses has authorized and directed the various counties of the state to pay them. NRS 7.260(3).[1]

No doubt the fixing of such a financial burden upon the several counties has and will cause serious problems in some cases. We are in great sympathy with the plight thus created for those public bodies. But because the rights recognized are of constitutional statute, there being inherent power of the courts to make such allowance and because of the legislative direction, the burden must fall upon the counties.

---

[1]NRS 7.260(3) reads as follows: "Compensation for services and expenses which is a county charge shall be paid by the county treasurer out of any moneys in the county treasury not otherwise appropriated, upon the certificate of the judge of the court that such attorney has performed the services required and incurred the expenses claimed. . . ."

Because of the magnitude of the problem, the legal profession, from within its own ranks, is no longer able nor obligated to meet the burden alone. State v. Rush, supra; State v. Hilgemann, 34 N.E.2d 129 (Ind. 1941). If the investigation fees here requested were not allowed in an amount fixed by the court in the exercise of sound discretion, counsel would either have to pay the expenses themselves or proceed to trial without being adequately prepared. Either alternative would produce unconscionable burdens or ineffective representation precipitating a series of court reviews which might and probably would require retrial. Society must assume the cost of providing a constitutionally adequate indigent defense system. The legislature has assigned that obligation to the counties.

No doubt it would be wiser for the state to provide a uniform system for the handling of this type of problem. One serious criminal case could literally bankrupt one of our small, financially insecure counties. But until the legislature provides a different method of affixing financial responsibility than is now upon our statutes, we have no choice but to require the counties to provide and pay for this type of service in accordance with legislative mandate. Should a county be unable to meet an obligation ordered under this rule, a more perplexing constitutional issue would be presented. There is no evidence that Washoe County cannot respond to the order of the lower court.

The counties, individually or by joint agreement, might well be able to meet this burden through a public defender system. See NRS 260.010, which authorizes such an office.

The lower court is permanently prohibited from seeking to enforce its order against the state controller and treasurer.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.