**STATE of Missouri, Appellant,**

v.

**John Charles GREEN, Respondent.**

**STATE of Missouri, Appellant,**

v.

**William COLEMAN, Respondent.**

**Nos. 55044, 55251.**

Supreme Court of Missouri, En Banc.

Sept. 13, 1971.

---

John C. Danforth, Atty. Gen., John C. Craft, Asst. Atty. Gen., Jefferson City, for appellant.

Eugene K. Buckley, Evans & Dixon, St. Louis, for Bar Ass'n of Metropolitan St. Louis, amicus curiae.

Henry S. Stolar, St. Louis, for Missouri Bar, amicus curiae.

Harold S. Goodman, Maryland Heights, for Lawyers Ass'n of St. Louis, amicus curiae.

James W. Benjamin, Kansas City, for Kansas City Bar Ass'n, amicus curiae.

Guy Magruder, Jr., Kansas City, for Lawyers Ass'n of Kansas City, amicus curiae.

Robert W. Van Dillen, City Counselor, James J. Gallagher, Associate City Counselor, St. Louis, for City of St. Louis, amicus curiae.

Willard B. Bunch, John J. Cosgrove, Legal Aid and Defender Society of Greater Kansas City, Kansas City, amicus curiae.

DONNELLY, Judge.

These cases involve the question whether counsel appointed to represent defendant indigents charged with crime are entitled to receive compensation for services and reimbursement for out of pocket expenses. In the Green case the charge was felonious escape and in the Coleman case the charge was first degree murder. In each instance the applications for fees and reimbursement were allowed by the trial court, the court in the Green case directing that the sums be taxed as costs against the State and said sums be allowed and approved by the state auditor and treasurer and in the Coleman case that they be taxed as costs and be paid by the State of Missouri. In both cases the State moved to amend the order and re-tax the costs, which motions were overruled, and in each instance the State has appealed.

In 1963, in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799, the United States Supreme Court held that the United States Constitution requires the State of Missouri, and other States, to furnish counsel to an indigent accused of crime. This means, in practical effect, that an indigent accused of crime cannot be prosecuted, convicted, and incarcerated in Missouri unless he is furnished counsel. The lawyers of Missouri, as officers of the Court, have fulfilled this State obligation, without com-

pensation, since we attained statehood, although other persons essential to the administration of criminal justice (e. g. prosecuting attorneys, assistants to the Attorney General, psychiatrists, et al.) have not been asked to furnish services gratuitously. The question is whether the legal profession must continue to bear this burden alone. The question is one for the judicial department (Art. II, § 1, Const. of Mo., V.A. M.S.) and must be decided by this Court (Art. V, § 1, Const. of Mo.; In re Richards, 333 Mo. 907, 63 S.W.2d 672). We consider the following language from State v. Rush, 46 N.J. 399, 217 A.2d 441, 448 (1966), appropriate:

"Although as we said above the assignment of counsel without compensation (except in murder cases) has been the rule in this State since 1795, the burden of those assignments has increased vastly. The increase has been not only in the number of assignments, but also in the demand a criminal case makes upon counsel. A criminal case used to be a fairly simple affair. The issue usually was a pure question of fact—did the defendant commit the crime? Today, with rapidly changing concepts relating to sundry matters, such as confessions, search and seizure, joinder of defendants, right to counsel, etc., the defense of criminal charges consumes far more time than when we came to the bar. To this must be added the impact of the right of the indigent, without cost, to appeal, and to press post-conviction proceedings and as well attacks in the federal courts. Further, the total demand will likely increase, for while criminal proceedings now dominate the stage, in the wings are other matters—minor offenses, juvenile delinquency, and civil commitments, areas in which counsel are now furnished but on a selective basis. We are satisfied the burden is more than the profession *alone* should shoulder, and hence we are compelled to relieve the profession of it." (Emphasis ours.)

■ We recognize, of course, that the legislative power of Missouri government (Art. II, § 1, Const. of Mo.) is vested in the General Assembly (Art. III, § 1, Const. of Mo.), and that the General Assembly has never provided for payment of compensation to Missouri lawyers for their representation of indigents in criminal cases and in cases wherein they seek post-conviction relief.

■ Accordingly, believing that a "permanent solution to the problem presented is an appropriate subject for the legislature" (People ex rel. Conn v. Randolph, 35 Ill.2d 24, 219 N.E.2d 337, 340), and believing that the General Assembly should have the opportunity to respond to the position taken today by this Court, we hold and announce:

(1) that the judgments are reversed and remanded with directions to strike the allowance of attorneys' fees and expenses; and

(2) that this Court, after September 1, 1972, will not *compel* the attorneys of Missouri to discharge *alone* "a duty which constitutionally is the burden of the State." State v. Rush, supra, 46 N.J. 399, 217 A.2d 441, 446.

MORGAN, HOLMAN and BARDGETT, JJ., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

FINCH, C. J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in separate dissenting opinion of FINCH, C. J.

SEILER, Judge (concurring in result).

I concur with the result reached in this case, but I would phrase the final paragraph of the opinion in terms so that it is clear this court and the trial courts can continue, when necessary, to require lawyers to serve as officers of the court, including representation of indigents in criminal cases. Courts cannot operate without

lawyers. As Judge Albert Ridge put it years ago (Journal of the Missouri Bar, August, 1950), the operation of the courts is really done by "Judge and Company". The judge and the lawyers together are necessary for the courts to function. The lawyers cannot escape being officers of the court and cannot escape a certain amount of pro bono publico work, which inevitably go with the special and exclusive privilege of being allowed to represent others in the court. Despite the increasing (and I think regrettable) trend toward commercialization of the law profession,[1] these obligations remain a part of the practice of law and I believe thoughtful lawyers would not want it otherwise.

It is impossible at this writing to foresee all the contingencies which may arise in the representation of indigents in criminal cases after September 1, 1972. There are certain to be instances, however, where the courts find it necessary to appoint counsel to represent an indigent, without compensation for time spent or reimbursement for out-of-pocket expenses. I do not take the opinion in today's case to mean the courts are surrendering their power to require a lawyer to perform his obligation as an officer of the court, even if it means doing so without financial reward or reimbursement. It would be a sad day for the courts and the profession if we get to the point where there is no obligation for a lawyer to serve as an officer of the court unless he is first assured of a fee.

FINCH, Chief Justice (dissenting).

I would affirm the judgments of the trial courts allowing attorneys' fees and reimbursement of expenses, and hence I must dissent from the principal opinion. I express my reasons in considerable detail because of the great importance I attach to the problem presented.

The resolution of the ultimate issue of whether these claims were properly allowed

involves several questions. The first of these is whether appointment of counsel was required. I agree with the conclusion in the principal opinion that such appointments were necessary under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Furthermore, the court was obligated to appoint counsel under the terms of § 545.820, V.A.M.S., which provides as follows:

"If any person about to be arraigned upon an indictment for a felony be without counsel to conduct his defense, and be unable to employ any, it shall be the duty of the court to assign him counsel, at his request, not exceeding two, who shall have free access to the prisoner at all reasonable hours."

Actually, an obligation to furnish counsel to indigent defendants has been recognized by the State of Missouri since its very earliest days. The predecessor of § 545.820 was first enacted in 1825 (Laws 1825, Ch. II, § 22, p. 319) and the statute has been carried forward virtually unchanged to the present time. A similar provision was in force in territorial days. See Digest of the Laws of the Missouri Territory, 1818, Crimes and Misdemeanors, § 35. Also, Supreme Court Rule 29.01(a), V.A.M.R., provides that an accused has the right to appear and defend by counsel, and that if a person charged with the commission of a felony is indigent and unable to employ counsel, the court, on request, has the duty to appoint counsel to represent him. It is crystal clear, therefore, that in the administration of justice in this state the trial court in these two cases had no choice other than to appoint counsel to represent these defendants after the court had determined that they were indigent and unable to employ counsel themselves.

The second question presented is whether attorneys so appointed are entitled to be compensated for their services and reimbursed for their out-of-pocket expenses if

---

1. For example, lawyers used to advance to become partners in a law firm. Now they become shareholders and members of the board of directors.

they so request. I agree with the principal opinion that this is a question for the judicial department, but, contrary to that opinion, I would hold that the attorneys were so entitled in these cases.

Historically, the lawyers of this state have accepted appointment in indigent cases and as a public service have represented defendants therein without compensation. They were officers of the court and when asked to serve, have done so. This system has continued to the present time except in certain local areas where some of the task of defending such cases has been assumed, in part, by local public defender or legal aid offices.

This practice to which I refer was established in this and other states at a time when the volume of cases requiring appointment of counsel was small and did not result in an unreasonable burden on members of the bar. As the principal opinion recognizes in quoting from State v. Rush, 46 N.J. 399, 217 A.2d 441, 448, that situation has changed drastically. Experience in Missouri, just as in New Jersey, is that the increase in number and complexity of criminal cases in which appointment of counsel to represent an indigent defendant is required is such that a real burden is created. We know, from our own dockets, that the volume of criminal appeals has increased substantially and that a large percentage of these criminal appeals involve indigent defendants for whom attorneys have been appointed to try the case in the circuit court and then to brief and argue the same on appeal. The various briefs herein cite numerous statistics to show the substantial number of appointments in criminal cases (the state does not dispute such volume). For example, the fiscal note (No. 506) to House Bill No. 41, an Act Relating to public defenders and other appointed counsel for certain persons, introduced in the 75th General Assembly,

estimated that on the basis of 1967 figures counsel would be required to defend indigents in almost 16,000 cases each year.[1] Some of the cases require a great amount of time. For example, in the case of State v. Nickens, Mo., 403 S.W.2d 582, the attorneys (in addition to preparation time) spent 13 days in actual court hearings on pre-trial motions, one mistrial, and a six-day trial, and then took an appeal in which a 300-page brief was filed.[2] The appointed attorneys spent approximately 1200 man hours on the appeal alone. In State v. Willie Curtis, Cause No. 1026-P, decided February 17, 1969, 37 Law Week 1135 and 2491, 15 St.L.Bar Journal 37, Spring 1969, Judge Harry M. James, Circuit Judge of the City of St. Louis, pointed out that in one case the appointed attorneys individually incurred actual out-of-pocket expenses approximating $1500.00, for which they were not reimbursed, and, in addition, spent so much time that their regular law practice suffered considerably as a result. These cases are extremes, but many cases are very time consuming and burdensome. In the Coleman case, Mr. Porter, one of the attorneys, spent 145.25 hours, and Mr. Carmody spent 52.5 hours. In Green, Mr. Carmody spent 104 hours.

The history of handling indigent criminal cases without compensation or reimbursement has led many persons to conclude that because the state has licensed the attorney to practice law, he is required, as an incident of that license, to serve by appointment in indigent cases without compensation or reimbursement of expenses. At the same time, people do not expect others, even if licensed by the state, to furnish services gratis. For example, in the prosecution of criminal cases, the state is represented in the trial court by a prosecuting attorney and on appeal by the attorney general. No one would suggest that their license obligates them to serve in these cases without

---

1. Undoubtedly, this figure would be greater now because criminal dockets have been increasing steadily.

2. Simeone and Lauer, The Proposed Public Defender System for Missouri, 23 Journal of The Missouri Bar 126, 129, footnote 5.

compensation. The services of doctors, dentists, and psychiatrists, including examinations for the purpose of testifying in the trial, often are required on behalf of persons accused or convicted of crime. These professional people, all licensed for such practice, are not expected to, and do not, as a general proposition, perform these services without compensation. Jails and prisons in which to house those charged with or convicted of offenses are required, and architectural and engineering services are necessary to design and build such facilities. Architects and engineers, although licensed by the state, are not expected to do this as a public service without compensation. Neither is the contractor and building material supplier expected to construct such facilities without compensation. No individuals are asked to feed or clothe them as a public service. The same can be said of many others who provide various kinds of services and goods for indigents accused of crime, or for that matter, for other indigents not involved in criminal proceedings but to whom the state furnishes services. Examples are legion.

What reason is there, then, that attorneys should be asked or expected to assume this heavy burden and serve without compensation and at their own expense? I perceive none. In that connection, it is of interest to note that in the recent publication of the American Bar Association and the Institute of Judicial Administration entitled "Standards Relating to Providing Defense Services," written as a part of the American Bar Association Project on Standards for Criminal Justice, the following statement is made, page 34:

"The legal profession has carried for many years the major part of the burden of representation in criminal cases. In so doing many individual lawyers have suffered personal hardship because of their loyalty to the tradition that no one should lack counsel because of indigency. Many private practitioners have devoted vast amounts of time which required them to neglect their paying clients and other responsibilities in order to perform needed services for indigent defendants. Society cannot justly impose this heavy demand on one segment of the population."

Decisions in other states requiring payment of compensation and expenses in representing indigent defendants include Abodeely v. County of Worcester, 352 Mass. 719, 227 N.E.2d 486; People ex rel. Conn v. Randolph, 35 Ill.2d 24, 219 N.E.2d 337; Honore v. Washington State Board of Prison Terms and Paroles, Wash., 466 P.2d 485; State v. Second Judicial District Court, 85 Nev. 241, 453 P.2d 421 (as to reimbursement of expenses).

The third question presented is whether the courts of Missouri have authority to allow compensation and expenses as costs, as the courts did here. I find no difficulty in concluding that the trial courts did have such power.

In the first place, § 545.820 made mandatory the appointment of counsel to represent these defendants. While it makes no provision as to compensation to be allowed for the services performed, the courts in appointing attorneys were acting in obedience to express statutory authority and direction. Necessarily, an obligation arises on the part of the state to pay for the services rendered pursuant to that statutory mandate. As the Supreme Court of Iowa said in Hall v. Washington County, (1850) 2 G. Greene 473, 476, in upholding the right of appointed counsel to recover a reasonable fee for his services under an Iowa statute which directed appointment of counsel for indigent defendants: " * * * reasonable compensation to the person who performs that service is a necessary incident, otherwise the arm of the law will be too short to accomplish its designs. * * * But it is enough, here, to say that, whilst the statute requires the court to appoint counsel in a case like this, it is silent on the subject of pay for his services. It leaves that matter to be disposed of upon the principles of the practice of the common law. There certainly is no legal exception as to

an attorney, so as to distinguish his case from any other functionary. * * * In this case, the right of an action in the plaintiff does not arise from an express contract; but it is necessarily given by the statute."

Unless § 545.820 is construed to imply an obligation to pay the attorneys for the services rendered, as above suggested, it, in my judgment, would be unconstitutional. As the principal opinion notes, the regulation of the bar is a matter for the judicial department of government. The questions of what duties the license to practice law entails and what obligations attorneys have as officers of the court are for the judiciary to determine. Therefore, whether lawyers must bear the burden and expense of providing defense services on behalf of the state for indigent defendants is exclusively a subject for the courts to decide. It follows that if § 545.820 is construed as a statute imposing the obligation on lawyers to assume the burden of defending indigent defendants without compensation or reimbursement, it infringes on the judicial function of determining the duties of such attorneys, and is unconstitutional.

On the other hand, if the statute is construed as implying an obligation on the part of the state to pay for the services rendered to indigent defendants, it does nothing more than establish what amounts to a public defender system for the state by providing for appointment and payment of attorneys in each case instead of establishing a full time public defender's office. So construed, § 545.820 is a valid statute. Actually, the bills for a public defender system introduced in the General Assembly in recent sessions provided for such a system in less populated circuits.

It is well established that where there are two possible constructions of a statute, under one of which it would be constitutional and under the other unconstitutional, the interpretation resulting in upholding the validity of the law is to be adopted. Milgram Food Stores, Inc. v. Ketchum,

Mo., 384 S.W.2d 510. That rule dictates that § 545.820 be construed as implying the obligation to compensate attorneys appointed pursuant to the statute.

Secondly (and more importantly), the court had an inherent right to order payment of the attorneys' fees and expenses as court costs irrespective of the existence of § 545.820. This court on numerous occasions has recognized and stated the principle that courts of general jurisdiction have the inherent power to do those things reasonably necessary to preserve their existence and function as a court, including the right to appoint persons needed to perform services essential to the functioning of the court. Such cases include Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977; State ex rel. Gentry v. Becker, 351 Mo. 769, 174 S.W.2d 181; Pogue v. Swink, 365 Mo. 503, 284 S.W.2d 868; State ex inf. Anderson v. St. Louis County, Mo., 421 S.W.2d 249; and State ex rel. Weinstein v. St. Louis County, Mo., 451 S.W.2d 99.

In the recent Weinstein case, supra, this court en banc unanimously held that the Circuit Court of St. Louis County had the inherent power to appoint and fix the compensation of personnel deemed essential to the proper functioning of the Juvenile Division of that court, provided such personnel and facilities were not supplied to the court by conventional methods. Failure to have those persons would have handicapped the juvenile court and limited its effectiveness in performing its functions, but it would not have had the effect of making the performance of those functions impossible. Failure of the juvenile court to have such personnel would not approach the seriousness of a situation in which counsel would not be available in criminal cases involving indigent defendants. Appointing defense counsel in these cases is an absolute prerequisite to the trial of the cases and the functioning of the entire system of criminal justice. Without them, there would be a complete breakdown in the administration of criminal justice in the State of Missouri, and the situation pro-

duced would be chaotic. I cannot imagine a more serious threat to the very existence of the judicial branch of government and the performance of its constitutionally mandated functions.

In Weinstein, supra, (451 S.W.2d 1. c. 101–102) this court quoted with approval from Noble County Council v. State ex rel. Fifer, 234 Ind. 172, 125 N.E.2d 709, 713, as follows:

"However, the authority of the court to appoint a probation officer, fix his salary and require payment thereof, does not rest upon mere legislative fiat. The court has inherent and constitutional authority to employ necessary personnel with which to perform its inherent and constitutional functions and to fix the salary of such personnel, within reasonable standards, and to require appropriation and payment therefor. The necessity of such authority in the courts is grounded upon the most fundamental and far reaching considerations.

"The preserving of the constitutional framework of our government against encroachment by one branch upon another is one of the prime responsibilities of our courts. Within and dependent upon this structure of constitutional government, our people are blessed by a galaxy of rights, privileges and immunities guaranteed to us by constitutional declaration. * * *

"These mandates necessarily carry with them the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. The right to appoint a necessary staff of personnel necessarily carries with it the right to have such appointees paid a salary commensurate with their responsibilites. The right cannot be made amenable to and/or denied by a county council or the legislature itself. Our courts are the bulwark, the final authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. The arm which holds the scales of justice cannot be shackled or made impotent by either restraint,

circumvention or denial by another branch of that government. * * *"

The foregoing language is very pertinent to the issue presented. Applying it to the situation here presented, I believe it necessarily follows that a court which has the right to direct that quarters be furnished and that essential employees be provided and paid has the inherent power to direct payment of necessary court costs in order to provide counsel constitutionally essential to the functioning of the court in the enforcement of the criminal laws of the state.

The principal opinion makes no reference to the Weinstein case or other cases dealing with inherent authority. It does not mention or discuss the question of inherent authority. It states simply that the General Assembly has never provided for payment of compensation to Missouri lawyers for representation of indigents in criminal cases, but that a permanent solution "is an appropriate subject for the legislature." I am unable to ascertain from that language whether the court intends to imply, and thereby hold, that the trial courts lacked inherent authority in the situations here presented to assess attorneys' fees and expenses as costs, or whether the court is saying simply that it is better to wait and see whether the General Assembly, following the announcement that counsel will not be required "to discharge *alone* 'a duty which constitutionally is the burden of the State,'" makes some provision by September 1, 1972, to take care of the situation. It also ignores § 545.820 and its effect.

If the opinion is intended to hold that the courts lacked inherent authority to allow such fees and expenses, then, for the reasons indicated, I strongly disagree. Such a result seems to me necessarily to overrule Weinstein and the other cases announcing the doctrine of inherent authority without saying so. As I have indicated previously, I cannot believe that a court would have authority to direct the employment

and payment of personnel in the Juvenile Court of St. Louis County for which money had not been appropriated, but lack authority to provide for counsel to indigent defendants, the absence of which would mean a complete breakdown of the system of criminal justice in Missouri. Stated in reverse, it is my view that if the court does not have the inherent authority to obtain and pay for counsel for indigent defendants, and thereby assure the continued enforcement of the criminal laws of the state, then necessarily it does not have authority to direct the employment and payment of additional personnel in the Juvenile Division of the Circuit Court when funds therefor have not been previously appropriated.

If the principal opinion does not rely on lack of inherent authority, but rather reverses as a matter of policy (as to whether it was appropriate to allow fees and expenses as costs in these cases), I would say simply that I disagree with that conclusion. It seems to me that past events demonstrate clearly that conventional means for providing and paying counsel for indigent defendants have failed and that the trial courts were justified in directing payment of fees and expenses. Proposed legislation providing for a public defender system for Missouri (including, in some instances, payment of private counsel) was first introduced in the General Assembly in 1967. Similar proposed legislation has been before each successive session of the General Assembly at which the question could be considered. No public defender system and no other method providing for compensating counsel for indigent defendants has been forthcoming.[3]

If the trial courts had inherent authority to allow such court costs or had a right to do so as a result of § 545.820, then their action in making the allowances in these cases would be subject to reversal only if there was an abuse of discretion in making the allowances. No contention is made by the state that the allowances made are unreasonable. The questions raised relate rather to the power of the courts to assess these costs. I find no basis for concluding that the trial courts have abused their discretion, and I find no error committed by the trial courts in these cases. Likewise, I am unable to find in the principal opinion where the majority of the court convicts the trial courts of error in making these assessments.

The court in both of these cases directed that the allowances be taxed as costs against the state. The Attorney General's brief, while opposing completely the idea that any right to allow compensation exists, suggests that if the court concludes otherwise, any allowance made should be against the county rather than the state. Such a contention was considered by this court in the early case of Kelley et al. v. Andrew County, 43 Mo. 338. There counsel had been appointed to defend an indigent accused of a felony. The court was asked to hold that the county was liable to the attorney for the reasonable value of his services. In response to the suggestion that, in the absence of a statute providing for payment for such services, members of the legal profession should serve without charge, the court said, 43 Mo. 1. c. 342: "Rejecting, however, the idea of gratuitous service in behalf of the class in question as too fanciful and romantic, and applying to the facts of the case the principles governing contracts express or implied, what were the legal relations and duties existing between the plaintiffs and the county of Andrew, as regards these services?" The court concluded that it was the state which was prosecuting the defendant to enforce a state statute and that it was the policy of the state to relieve the county of such obligation. Accordingly, it held that the county was not liable.

3. Missouri is one of three states which have not established a public defender system or some program for paying and reimbursing attorneys appointed to repre- sent indigent defendants. Green, Introduction, 23 Journal of The Missouri Bar 106.

I believe that it is logical and proper that the costs of such services be taxed against the state rather than the county. This would appear to be in harmony with the policy of the state as to payment of costs in such felony cases. Sections 550.020 and 550.040, V.A.M.S. While the allowances here involved are not costs in the technical sense that they have been provided for by statute and denominated therein as costs, they nevertheless are fees incident to the trial of a particular case, and I think they are properly classified as costs and taxed as such. In civil litigation, when a guardian ad litem is appointed, it is customary for the court to allow compensation to the guardian ad litem and to order it paid as costs in that case. It is just as logical to order the state, in these cases, to pay as costs the fees which the courts order taxed in favor of defendants' counsel for the handling of the defense of these cases.

Costs taxed against the state in criminal cases are appropriated in a lump sum by each session of the General Assembly. House Bill No. 3 of the Third Extra Session of the 75th General Assembly, approved by the Governor on June 22, 1970, appropriated funds for costs in criminal cases during the preceding fiscal period. That appropriation contained this language: "For costs in criminal cases, except payment of attorneys' fees taxed as costs." A similar limitation was in the appropriation for the fiscal period commencing July 1, 1971 (§ 3.120 of Conference Committee Substitute for House Bill No. 3 of the 76th General Assembly). In my judgment, that limitation against payment for attorneys' fees taxed as costs is unconstitutional as in violation of the obligation of the state to provide counsel for indigent defendants in felony cases, and also as being an infringement upon the inherent right of the courts to determine and assess costs. I would hold that that limitation in the appropriation act is unconstitutional and hence unenforceable.

Judge Seiler in his opinion concurring in result expresses the view that at least some lawyers will want to do some pro bono publico work. In that connection, I would point out that affirmance of these judgments does not mean automatic payment in every case, or that lawyers could not perform these duties without compensation. Fees and expenses would be allowed only if requested, and when requested, the amount thereof would be a matter for determination by the trial court, reviewable on appeal. The allowances made in these cases were based on compensation to the attorneys which was less than full compensation which they normally would charge. It was intended to cover overhead and something in addition to prevent substantial loss by the attorneys, as well as to reimburse them for actual out-of-pocket expense. That was as it should be. In such a system, the attorneys in extreme cases involving extensive services and hardship with reference to handling other law business would be entitled to greater allowances, but certainly there would be some cases where the court might conclude that no compensation other than perhaps reimbursement for out-of-pocket expenses should be made. Such a system would permit a reasonable amount of pro bono publico work but still protect the bar from the unreasonable burden with which it is now saddled.

I strongly believe that these cases should be affirmed. Hopefully, the General Assembly will provide a permanent solution by a statewide public defender system or some other method of providing paid counsel for indigent defendants. If that is not done, we are in real trouble in the field of criminal law enforcement when September 1, 1972, arrives, unless at that time the majority no longer abstain from action and instead exercise the inherent authority which, in my judgment, must and does exist.