The appellant, Curtis Bright, was indicted by the Grand Jury of Jackson County, Mississippi, on a charge of the sale of a controlled substance, marijuana. He was convicted and sentenced to serve a term of eight (8) years in the Mississippi State Penitentiary. He has appealed to this *Page 819 
Court, and now contends that the trial court committed reversible error:
(1) In having failed to sustain defendant's motion to quash the jury;
(2) In failing to furnish an expert chemist to examine the substance possessed and alleged to be contraband; and
(3) In failing to require the state to divulge to the defendant the time and place where and when the crime was alleged to have occurred.
The state offered testimony to show that "undercover agents", Earlie Hughes and Dave Gross, purchased a quantity of marijuana from defendant Bright for the sum of fifteen dollars ($15.00). During the trial both agents identified Bright as the individual who sold them the substance alleged to have been marijuana.
The defendant offered an alibi as a defense. He introduced two witnesses who testified that the defendant went with them to Gulfport on the day when it was testified that defendant sold marijuana, and they were with him until after dark. Geraldine Bright, who was at the time his fiancee, testified that the defendant stayed at her home until 11:30 P.M. The jury, however, returned a verdict of guilty.
During the trial the defendant requested the court for permission to question or voir dire the entire jury panel before acceptance of the petit jury. It appears that two juries were drawn, or at least juries were drawn on two occasions. The purpose of two juries was to accommodate two circuit judges who were holding court in Jackson County. The defendant wanted to question all of these jurors, because he claimed that because of diversity of age, race and sex in the jurors he was limited in his effort to obtain a cross-section of the jurors summoned. He argues that since Section 1411.7, Mississippi Code 1942 Annotated (Supp. 1972) [now Mississippi Code Annotated § 9-7-49 (1972)] provided that no civil cases should be set for trial during the week in which defendant's case was called, defendant had the right to question all jurors.
This is indeed a novel theory because it has been the practice for many years that before the defendant was required or permitted to voir dire a jury panel it must have been first presented to the State of Mississippi by the court and then to the defendant. One text writer has this to say on this subject: "The usual practice, however, is to put those jurors who have been called into the jury box on their voir dire or oath to tell the truth, and then for counsel or the court to question them." 31 Am.Jur. Jury § 136, at 120 (1958).
In the case of Smith v. State, 190 Miss. 24, 198 So. 562
(1940), the entire venire was called to the bar and questioned by the judge; some were discharged, but twelve men were then called to the box and six additional jurors were placed in chairs outside the box. The court then questioned the eighteen jurors as to the case before them. Some were excused, but the same number was maintained by replacements. These jurors were then turned over first to the State for its voir dire and then to the defendant, until twelve jurors were accepted. The defendant contended that he should not have had to voir dire more than twelve jurors at the time. This Court held, however, that this method of voir dire was not objectionable.
Section 1792, Mississippi Code 1942 Annotated (1956) [now Mississippi Code Annotated § 13-5-65 (1972)] is in the following language:
 "After the drawing of the grand jury, the remaining jurors in attendance shall be impaneled into three petit juries for the first week of court if there be a sufficient number left, and, if not, the court may direct a sufficient number for that purpose to be drawn and summoned. If there be more than enough jurors for the three juries, or for two juries if the court shall direct only two to be impaneled, the excess may be discharged, or they may be retained, in the discretion *Page 820 
of the court, to serve as talesmen. If so retained, they shall have the privilege of members of the regular panel, of exemption from service."
Section 1802, Mississippi Code 1942 Annotated (1956) [now Mississippi Code Annotated § 13-5-69 (1972)] is in the following language:
 "The parties or their attorneys in all jury trials shall have the right to question jurors who are being impaneled with reference to challenges for cause, and for peremptory challenges, and it shall not be necessary to propound the questions through the presiding judge, but they may be asked by the attorneys or by litigants not represented by attorneys."
Section 2520, Mississippi Code 1942 Annotated (1956) [now Mississippi Code Annotated § 99-17-3 (1972)] requires that: "In all cases the accused shall have presented to him a full panel before being called upon to make his peremptory challenges."
The text writer points out in 31 Am.Jur. Jury § 138, at 120 (1958) that:
 "Generally, the extent to which parties may examine jurors as to their qualifications rests largely in the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and where it appears that harmful prejudice has been caused thereby. It is the duty of the trial judge on the impanelment of a jury to assure himself that each member of the jury is unbiased and that no one of them is disqualified. He ordinarily has a discretionary power of conducting the voir dire examination of prospective jurors. Under some statutes, however, it is the duty of the court on motion of either party to examine the prospective jurors under oath with respect to their competency. But the court need not examine prospective jurors on their voir dire when no motion is made therefor, and the objection raised rests on admitted facts."
Moreover, the drawing and impaneling of a petit jury is directory. Mississippi Code Annotated § 13-5-87 (1972) is in the following language:
 "All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely, and a jury listed, drawn, summoned or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn, and it shall have the power to perform all the duties devolving on the jury."
See Upshaw v. State, 231 Miss. 158, 94 So.2d 337 (1957); Sullivan v. State, 155 Miss. 629, 125 So. 115 (1929). We think it was within the sound discretion of the trial judge as to how many jurors would be submitted to the litigants for their voir dire.
The appellant next argues that the circuit court had no authority to try criminal cases during the week civil cases were set for trial. He points out the pertinent part of Mississippi Code Annotated § 9-7-49 (1972) as follows:
 "(1) The circuit court terms of the nineteenth circuit court district shall be held as follows:
 * * * * * *
 Jackson County: On the second Monday of April and on the first Monday of October, eight (8) weeks, at which terms a grand jury shall be empanelled; and on the second Monday of January and the second Monday of July, eight (8) weeks each, at which terms no grand jury shall be drawn or empanelled except by order of the judge.
 * * * * * *
 . . . At the said January and July terms both civil and criminal cases may be tried, but the trial of civil cases shall take precedence over the trial of criminal cases; provided, however that civil *Page 821 
and criminal cases shall not be set for trial during the same week of said terms." (Emphasis added)
An examination of this Code section leads us to the conclusion that since this section gives the court the authority to try criminal cases during the same week that civil cases are set for trial, it was not a reversible error for the court to set civil cases during the week criminal cases were to be tried. It is the business of the court to try cases, and if there are not enough civil cases to keep the court busy, criminal cases may be set for trial, so long as the civil cases are given precedence over the criminal cases. This part of Mississippi Code Annotated § 9-7-49
(1972) is advisory and not mandatory. See Strain v. Gayden,197 Miss. 353, 20 So.2d 697 (1945); compare Williams v. State,156 Miss. 346, 126 So. 40 (1930).
The defendant argues next that his request for the assistance of an independent chemist at county expense to analyze or test the substance charged to be marijuana was erroneously denied. He contends that since he is an indigent he cannot afford to employ an expert chemist to ascertain what may or may not be contraband.
In Jackson v. State, 243 So.2d 396 (Miss. 1971), we held that a defendant charged with possession of marijuana was entitled to a sample of the contraband for his inspection and analysis. In the instant case the defendant was given a part of the marijuana.
Some courts and law writers have agreed with the contention of appellant.
The case of People v. Watson, 36 Ill.2d 228, 221 N.E.2d 645
(1966) is one of the leading cases in which an appellate court adopts the view that an indigent defendant is entitled to the aid of expert witnesses at state expense. After having pointed out that the defendant is entitled to compulsory process under the state and federal constitution, the Illinois Supreme Court held:
 "Thus it is at once apparent that the right to summon witnesses is fundamental to our legal system. It is defendant's contention that a right so fundamental should not be made to depend upon the financial circumstances of the defendant. We share this view.
 The court recognizes that there is a distinction between the right to call witnesses and the right to have these witnesses paid for by the government, but in certain instances involving indigents, the lack of funds with which to pay for the witness will often preclude him from calling that witness and occasionally prevent him from offering a defense. Thus, although the defendant is afforded the shadow of the right to call witnesses, he is deprived of the substance.
 The value of an expert witness's testimony lies in his experience and, more particularly, in his preparation. Although a subpoena would suffice to compel his appearance at trial, this appearance by itself would be of no value unless he had been able to make findings upon which to base his testimony. It is the cost of making these preparatory findings which the defendant feels should be borne by the government." 36 Ill.2d at 233, 221 N.E.2d at 648.
The Court then said:
 "The opinion of a handwriting expert in this case then may have been crucial, and defendant's lack of funds prevented him from presenting to the jury evidence which may have established his innocence. We hold that under the facts presented in this case defendant was entitled to a reasonable fee for the purposes of hiring a questioned document examiner." 36 Ill.2d at 234, 221 N.E.2d at 649.
See also United States v. Theriault, 440 F.2d 713 (5th Cir. 1971); Bradford v. United States, 413 F.2d 467 (5th Cir. 1969); Jacobs v. United States, 350 F.2d 571 (4th Cir. 1965); Bowen v. Eyman, 324 F. Supp. 339 *Page 822 
(D.Ariz. 1970); Bush v. McCollum, 231 F. Supp. 560 (N.D.Tex. 1964); State v. Taylor, 202 Kan. 202, 447 P.2d 806 (1968); State v. Green, 55 N.J. 13, 258 A.2d 889 (1969); State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966).
In Bradford v. United States, supra, where defendants were charged with conspiracy to pass, alter and publish forged money orders, the federal court held that one of the defendants, an indigent, was entitled to the aid of a handwriting expert and stated:
 "The government's case against Washam depended almost entirely upon the testimony of the two experts. It was therefore necessary, if Washam was to combat this evidence, that he have the assistance of other handwriting and fingerprint experts." 413 F.2d at 474.
In the case of State v. Second Jud. Dist. Ct. In and For Co. of Washoe, 85 Nev. 241, 453 P.2d 421 (1969), the Court held that the out-of-pocket money expended by an attorney for an indigent defendant should be paid out of public funds.
On the other hand, the United States Supreme Court said in United States v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953) [where the defendant was charged with murder], that the United States Constitution does not require the state to provide the indigent defendant with an expert psychiatrist where he was previously examined by a court-appointed psychiatrist.
In the case of Phillips v. State, 197 So.2d 241 (Miss. 1967), we held that where the trial court overruled a motion of an indigent defendant requesting the trial court to appoint a psychiatrist that: "Neither the United States Constitution nor the Mississippi Constitution requires that the Nation or State furnish an indigent defendant with the assistance of a psychiatrist. The only assistance that they require is the assistance of legal counsel." [197 So.2d at 244]. However, the trial courts of this state have for many years appointed psychiatrists to determine whether or not a prisoner was sane.See Lipscomb v. State, 76 Miss. 223, 25 So. 158 (1899); seealso list of cases cited in dissenting opinion in Jaquith v. Beckwith, 248 Miss. 491, at 512, 514, 157 So.2d 403, at 413, 415 (1963).
In Laughter v. State, 235 So.2d 468 (Miss. 1970), the defendant was charged with the sale of marijuana. He made a motion to require the state to furnish money so that his attorney could employ a private investigator and a chemist. This Court held that the motion was properly overruled, because "There is no precedent for this and therefore it is disallowed." [235 So.2d at 472].
The right to expert witnesses for the defendant at the expense of the state or county has been generally denied by most of the state courts. See Thessen v. State, 454 P.2d 341 (Alaska 1969); State v. Superior Court In and For County of Pima, 2 Ariz. App. 458,409 P.2d 742 (1966); State v. Glass, 283 So.2d 696 (La. 1973); Foster v. Commonwealth, 209 Va. 297, 163 S.E.2d 565
(1968); Trowbridge v. State, 502 P.2d 495 (Okla. Cr.App. 1972).
After having reviewed the authorities, we have reached the conclusion that the trial court was correct in denying the petitioner the right to employ an expert witness at the expense of the state. In the case before us there was no issue as to whether or not the substance was contraband; but, rather, the issue was whether or not the defendant sold any substance, since his defense was an alibi.
The appellant contends that the judgment of the trial court should be reversed because the trial court did not require the state to inform the defendant of the time and place where the crime was alleged to have occurred. He cites Armstrong v. State,214 So.2d 589 (Miss. 1968) as the authority requiring the state to divulge this information.
The appellant has obviously misinterpreted the holding inArmstrong. We held in *Page 823 
that case that although it was largely discretionary with the trial judge, the trend of authority indicated that the trial judges, in order to insure due process, should permit the defendant to inspect tangible evidence.
The trial court may even require the state to divulge information essential to the proper defense of a prosecution, but it is not reversible error to refuse to do so.
It is still the law of this state that the state is not required to give the defendant a bill of particulars. Robinson v. State, 253 So.2d 398 (Miss. 1971); McDaniel v. State, 191 Miss. 854, 4 So.2d 355 (1941); Starling v. State, 90 Miss. 255, 43 So. 952 (1907).
We find no error in the trial of this case and we must, therefore, affirm the sentence and judgment of the trial court.
Affirmed.
All Justices concur.