Kenneth M. WEINSTOCK,
Respondent/Cross–
Appellant,

v.

Bob HOLDEN, Treasurer for the State of Missouri, and Jeremiah W. (Jay) Nixon, Attorney General for the State of Missouri, Appellants/Cross–Respondents,

and

Senator John D. Schneider,
Respondent.

No. 81322.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Paul R. Maguffee, Asst. Attys. Gen., for respondent/cross-appellant.

Louis J. Basso, St. Louis, for appellants/cross-respondents.

John D. Schneider, John E. Bardgett, Marc Ellinger, Jefferson City, for respondent.

PER CURIAM.

This matter comes before us on the Court's own motion to determine whether sec. 105.464, RSMo Supp.1998, prohibits, and indeed criminalizes, the participation of the judges of this Court or any article V judge from hearing a case involving the validity of Senate Concurrent Resolution 3, 1997 (SCR3) which, among other matters, touches on judicial salaries. The Court requested and has considered the suggestions filed by all parties to the case.

As amended in 1997, sec. 105.464 provides as follows:

> No person serving in a judicial or quasi-judicial capacity shall participate in such capacity in any proceeding in which ... [t]he person knows the subject matter is such that the person may receive a direct or indirect financial gain from any potential result of the proceeding.

Prior to 1997, sec. 105.464 did not prohibit a judge from sitting where the judge's financial interest was only "indirect." *See sec. 105.464, RSMo 1978.* Section 105.478 declares that a first violation of the above provision is a class B misdemeanor and that all subsequent violations are class D felonies. Only three statutory exceptions exist: 1) a judge may request transfer to another judge; 2) a judge may participate where the state or a political subdivision is a party; and 3) a judge may perform a ministerial act or other act required by law. *Secs. 105.464.2* and *105.466.1.* The state of Missouri is not a named party in this case. A judicial determination of the validity of SCR3 is not a ministerial act. Moreover, it has long been the rule that any judge has a right to disqualify upon a finding that the judge's impartiality might reasonably be questioned. *Autenrieth v. Schaff,* 271 Mo. 248, 196 S.W. 1129, 1131 (banc 1917). Thus, no individual judge is required by law to sit in this particular case. The exceptions in the statutes do not apply here.

Under the pre–1997 version of sec. 105.464, it was arguable that no judge other than Judge Weinstock was prohibited from participating here because only he was a party in this case and only he could receive a direct financial gain from the outcome of this case. However, all ambiguity was removed by the 1997 amendment. In the 1997 version, the General Assembly made clear that all state judges were prohibited from participating in a much broader class of cases. So sweeping is the amended statute it might now be fairly argued that unless one of the few exceptions applies, all judges who have bank accounts, hold insurance policies or pay taxes are prohibited from participating in a case involving those matters because of the judges' potential for indirect financial gain.

The Supreme Court of the United States addressed a similar statute in *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). The statute in *Will* prevented any federal judge from hearing a case in which the judge had "a financial interest in the subject matter in controversy" and made no mention of a rule of necessity. The Supreme Court determined that the federal statute did not alter the common law rule of necessity, discussed hereafter, and applied the rule of necessity without disturbing the statute.

There are important differences between the present case and *Will.* First, this Court is constrained in its construction of sec. 105.464 by the requirement that words and phrases of the statute be given their plain, ordinary and usual meaning. *Sec.* 1.090, RSMo 1994. Second, the recorded history and purpose of the federal statute was to guarantee litigants a fair forum in which to pursue their claims. *Will,* 101 S.Ct. at 481. Section 105.464 by contrast forbids access to judicial review and leaves no room to interject the rule of necessity.

Before January 1, 1999, our canons of judicial ethics provided that a judge "should" recuse in cases where the judge's impartiality might reasonably be subject to question. *Rule 2, Canon 3D(1).* Implicit in the use of the non-mandatory term "should" was the recognition that exceptional circumstances may exist where the judge has a duty to do justice for the parties, prevent irreparable harm or preserve the peace, notwithstanding the requirement of recusal in an ordinary case. This common sense principle has long been recognized in case law as the "rule of necessity,"[1] although our rules did not expressly recognize the particular circumstances when it might apply. Our predecessors thought it sufficient to use the word "should," leaving to the sound judgment of those who followed to determine

---

**1.** An excellent discussion of the rule of necessity has been supplied in a letter from the Commission on Retirement, Removal and Discipline sought by this Court after the notice of appeal was filed herein. The letter has been made a part of the official public record in this case.

whether recusal was required in a particular case.

■ Effective January 1, 1999, a new canon of judicial ethics relating to recusal was adopted. The canons now provide that a judge "shall" recuse under specified circumstances. *Rule 2, Canon 3 E(1)* V.A.M.R. (Supp.1998). Among the specific grounds for recusal is where a judge has an "economic interest" in a case that is "more than de minimus." *Canon 3 E(1)(c).* Even though the mandatory "shall" was used in the new canon, the text is followed immediately by amended commentary specifying that the canon does not prohibit a judge from acting under the traditional "rule of necessity" as that term has developed in case law. The commentary is not merely a comment by a committee of the bench or bar. Rather, it is the comment of this Court regarding applicability of the canons. Thus, the commentary on the text is as much a part of the canons of judicial ethics as the text itself. One example identified in which the rule of necessity is said to override the canon is when "a judge is required to participate in judicial review of a judicial salary statute."

While this particular case involves judicial review of a "concurrent resolution" relating to judicial pay rather than a statute, no doubt exists that all judges of the state, whether active or senior, have a potential stake in the outcome of the case. Unless the rule of necessity is applied, the parties can have no judicial resolution of their rights. The reason behind the rule of necessity is that denying any individual access to courts for the vindication of rights is a far more egregious wrong than for a judge to sit in a case that may economically benefit the judge. *Rose v. State Board of Registration for Healing Arts,* 397 S.W.2d 570, 576 (Mo.1965). Therefore, the canons now specifically make an exception from the recusal requirement where to follow the canons would result in no judge being able to decide the case. The provisions of sec. 105.464 are in direct conflict with both the prior and present canons of ethics found in Rule 2.

A statute that effectively forecloses access of any citizen to a resolution of a claim in our courts is constitutionally suspect for several reasons. The most fundamental is that such statute violates the separation of powers doctrine. The Missouri Constitution decrees:

> The powers of government shall be divided into three distinct departments— the legislative, executive, and judicial— each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

*Mo. Const. art. II, sec. 1.*

Our constitution more specifically describes the judicial powers in article V. This Court has "general superintending control over all courts and tribunals ... [,] may issue and determine original remedial writs [and has] [s]upervisory authority over all courts." *Mo. Const. art. V, sec. 4.* In furtherance of those duties, this Court "may establish rules relating to practice, procedure and pleading for all courts. . . ." *Mo. Const. art. V, sec. 5.* This Court has both express and inherent authority to regulate the practices of judges and lawyers in the courts of this state. *See In re Conner,* 357 Mo. 270, 207 S.W.2d 492, 495 (banc 1948). The power to regulate the ethical conduct of judges has been provided for by this Court's adoption of Rule 2, the Code of Judicial Conduct.

■ The doctrine of separation of powers, as set forth above in Missouri's constitution, is vital to our form of government because it prevents the abuses that can flow from centralization of power. *See, e.g., State Auditor v. Joint Committee on Legislative Research,* 956 S.W.2d 228, 231 (Mo. banc 1997); *State Tax Comm'n v.*

*Administrative Hearing Comm'n,* 641 S.W.2d 69, 73–74 (Mo. banc 1982); *State ex inf. Danforth v. Banks,* 454 S.W.2d 498, 500 (Mo. banc 1970).

■ While it was not the purpose of the Constitution to make a total separation of these three powers, each branch of government ought to be kept as separate from and independent from each other as the nature of free government will admit. *Rhodes v. Bell,* 230 Mo. 138, 130 S.W. 465, 468 (1910); *see also Albright v. Fisher,* 164 Mo. 56, 64 S.W. 106, 108–09 (1901).

Section 105.464 goes well beyond any incidental overlap of powers. It violates constitutional principles concerning separation of legislative and judicial functions. As previously noted, this Court has both express and inherent power in article V to regulate the conduct of judges. "[T]he provisions of Article V of the [Missouri Constitution] are themselves limitations on legislative power, and, in so far as they provide for the organization and operation of the Judicial Department of the State, the Legislature cannot change them." *State ex rel. Creamer v. Blair,* 364 Mo. 927, 270 S.W.2d 1, 6 (banc 1954).

There are obvious areas of extrajudicial misconduct related to judicial office that are subject to legislative sanction, such as accepting a bribe, requiring a *quid pro quo* to perform a judicial act, or stealing public funds. However, a legislative enactment that prohibits and criminalizes the very act of deciding a pending case by a duly elected, appointed or assigned judge eviscerates the concept of an independent judicial branch of government.

The goal of preventing conflicts of interest in judicial proceedings certainly is laudable. As discussed above, the judicial branch, through its Code of Judicial Conduct, provides canons to guide judges through possible conflicts of interest, and to require judges to carry out their adjudicatory duties impartially. *Rule 2, Canons 1, 2, and 3.* By establishing these rules for proper judicial conduct, this Court has exercised its powers under article V, sections 4 and 5, and the separation of powers provision in our Constitution prevents the legislature from encroaching on this judicial function. Insofar as section 105.464 violates the separation of powers provision of Missouri Constitution art. II, sec. 1, it is a nullity.

All concur.