VICTOR C. HOWARD, JUDGE
The State Public Defender[1] appeals the trial court's grant of judgment on the pleadings in favor of the Missouri Governor[2] on its claims that the Governor's withholding of fiscal year 2017 funds appropriated by the General Assembly to the Public Defender violated the Missouri Constitution. The judgment is affirmed in part; the appeal is dismissed in part.
Factual and Procedural Background
The Public Defender's pleadings, which are taken as true for purposes of this appeal, asserted that for fiscal year 2017, which began July 1, 2016, and ended June 30, 2017, the General Assembly appropriated $41,497,581 to the Public Defender. This sum represented approximately a $4.5 million increase over the appropriation received in fiscal year 2016. In July 2016, the Governor withheld $3.5 million of the Public Defender's appropriation. The State of Missouri's official financial system, SAM II, indicated that the Public Defender was scheduled to receive $1 million of the $4.5 million increase in four equal quarterly installments of $250,000. The Governor issued a proclamation to the General Assembly that the withholding was made pursuant to his authority to control the rate of expenditure provided in *375 article IV, section 27 of the Missouri Constitution. Article IV, section 27.1 provides:
The governor may control the rate at which any appropriation is expended during the period of the appropriation by allotment and may reduce the expenditures of the state or any of its agencies below their appropriations whenever the actual revenues are less than the revenue estimates upon which the appropriations were based. The governor shall not reduce any appropriation for the payment of principle and interest on the public debt.
The withholding represented approximately 1% of the state general revenue appropriated to all state departments for fiscal year 2017 but 8.5% of the budget of the Public Defender.
The Public Defender filed its petition for declaratory judgment and injunctive relief against the Governor in July 2016 and its first amended petition in August 2016 asserting four claims that the withholding violated the Missouri Constitution. Count I asserted that the withholding violated the expenditure reduction provision of article IV, section 27 because the Public Defender is not a state agency within the meaning of that provision. Count II asserted that the withholding violated the expenditure reduction provision of article IV, section 27 because the withholding did not apply to the state as a whole. Count III asserted that the withholding violated the expenditure rate control provision of article IV, section 27 because it constituted a permanent expenditure reduction, not a temporary rate control. Finally, Count IV alleged that the withholding violated the separation of powers doctrine in article II, section I because it allowed the executive branch of government to impede the proper functioning of an independent department of the judicial branch.
The Governor moved to dismiss all counts on ripeness grounds arguing that fiscal year 2017 "has barely begun" and at this point, it could not be known whether the Governor is exercising his constitutional authority to control the rate of appropriation or whether they are being reduced.
In September 2016, the trial court dismissed Count III based on ripeness. It denied the motion as to Counts I, II, and IV.
The Governor filed a renewed motion to dismiss based on ripeness or, in the alternative, motion for judgment on the pleadings in October 2016. The trial court granted the motion and entered judgment on the pleadings in favor of the Governor on Counts I, II, and IV. It found that the Public Defender is a "state agency" for purposes of article IV, section 27 and that the provision does not require the reduction of expenditures of the state as a whole. Finally, it found that the Public Defender does not exercise judicial power; therefore, it cannot claim that a restriction in its funding by the Governor (the executive) constitutes a violation of the separation of powers clause. This appeal by the Public Defender followed.
Standard of Review
The appellate court reviews the trial court's grant of a motion to dismiss or a motion for judgment on the pleadings de novo. Mo. Mun. League v. State , 489 S.W.3d 765, 767 (Mo. banc 2016) ; Claudia Lee & Assocs. v. Kansas City, Mo. Bd. of Zoning Adjustment , 489 S.W.3d 802, 809 (Mo. App. W.D. 2016). For purposes of both motions, the well-pleaded facts of the nonmoving party are treated as admitted. Eaton v. Mallinckrodt, Inc. , 224 S.W.3d 596, 599 (Mo. banc 2007) ; Claudia Lee & Assocs. , 489 S.W.3d at 809. "In determining whether a motion to dismiss should have been granted, the appellate court reviews *376 the petition, in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." Mo. Mun. League , 489 S.W.3d at 767 (internal quotes and citation omitted). The position of a party moving for judgment on the pleadings is like that of a movant on a motion to dismiss; i.e., assuming the pleaded facts to be true, the facts are, nevertheless insufficient as a matter of law. Id. at 767-68. A motion for judgment on the pleadings is properly granted if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law. Id. at 768. The reviewing court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it; therefore, the trial court's judgment will be affirmed if it is correct on any ground supported by the record regardless of whether the trial court relied on that ground. Mo. Soybean Ass'n v. Mo. Clean Water Comm'n , 102 S.W.3d 10, 22 (Mo. banc 2003).
The Public Defender raises four points on appeal challenging the trial court's judgment on the pleadings on Counts I, II, and IV and its dismissal of Count III as not ripe. In point I, the Public Defender argues that the Governor's withholding under article IV, section 27 violated the separation of powers doctrine in article II, section I because it is an independent department of the judicial branch under section 600.019.1, RSMo 2016, and the withholding targeted it for substantially disproportionate reductions and impermissibly impeded its proper functioning. In points II and III, the Public Defender contends that it is not an agency within the meaning of the expenditure reduction provision of article IV, section 27 and the withholding violated that provision because it did not apply to the state as a whole. Finally, in point IV, the Public Defender contends that the trial court erred in dismissing Count III as not ripe.
Ripeness
Before addressing the merits, the issue of ripeness is examined. "A declaratory judgment is not a general panacea for all real and imaginary legal ills." Mo. Soybean Ass'n , 102 S.W.3d at 25. "It is not available to adjudicate hypothetical or speculative situations that may never come to pass." Id. A trial court, therefore, cannot render a declaratory judgment unless the petition presents a controversy ripe for judicial determination. Id. at 26.
In this case, the Governor withheld $3.5 million of the Public Defender's appropriation under his authority in article IV, section 27.1 of the Missouri Constitution. The provision contains two fiscal control mechanisms. It "broadly authorizes the governor to control the rate at which any appropriation is expended and to balance the state's budget by reducing expenditures in the event that state revenues fall below the revenue expectations." State ex rel. Liberty Sch. Dist. v. Holden , 121 S.W.3d 232, 233 (Mo. banc 2003).
In cases involving the Governor's right to reduce state expenditures under article IV, section 27, "the question of the propriety of the Governor's order to reduce state expenditures is ripe for adjudication only where there is a factual showing that actual state revenues have fallen below revenue estimates and the Governor has reduced the expenditures below the amount appropriated." State ex rel. Sikeston R-VI Sch. Dist. v. Ashcroft , 828 S.W.2d 372, 375-76 (Mo. banc 1992). In Schweich v. Nixon , 408 S.W.3d 769 (Mo. banc 2013), the Missouri Supreme Court determined that the Missouri State Auditor's declaratory judgment action filed in August 2011 challenging the Governor's *377 authority under article IV, section 27 to withhold $300,000 of the appropriation for the Auditor's office for fiscal year 2012 was not ripe. Id. at 779. It held that the Auditor's challenge to the Governor's authority to reduce expenditures of state agencies below their appropriations brought prior to the end of the fiscal year was premature. Id. The Court explained, "Until the end of that year it could not be determined whether the Governor merely was controlling the rate of appropriations or was withholding a portion of the Auditor's appropriation entirely nor could it be determined whether the constitutional requirements for permitting a permanent withhold were met." Id. at 772. See also Id. at 779.
Schweich controls in this case. While the Governor indicated in his proclamation to the General Assembly that the withholding was made pursuant to his authority in article IV, section 27 to control the rate of expenditures, the Public Defender framed Counts I, II, and IV of its declaratory judgment action as a challenge to the Governor's authority to reduce expenditures. As in Schweich , such challenges were not ripe because at the time of the trial court's judgment before the end of the fiscal year, it could not be known if the withholding was temporary to control the rate of expenditure or would be permanent or whether the constitutional requirements for permitting a permanent withholding were met, namely, if actual revenues would be less than revenue estimates.
The Public Defender asserts that this case is unlike Schweich . It contends that article IV, section 27 was amended after the Schweich opinion to include two new subsections that require the Governor to notify the General Assembly by proclamation whenever the Governor exercises one of the fiscal control mechanism in that section-control of the rate of expenditure or reduction. See MO. CONST. art. IV, section 27.2 & 27.3. The General Assembly then may reconsider the Governor's rate control or reduction. Id . Specifically, section 27.2 provides, in pertinent part, "The governor shall notify the general assembly by proclamation whenever the rate at which any appropriation shall be expended is not equal quarterly allotments, the sum of which shall be equal to the amount of the appropriation." MO. CONST. art. IV, section 27.2. Section 3 provides, in pertinent part, "The governor shall notify the general assembly by proclamation when the governor reduces one or more items or portions of items of appropriation of money as a result of actual revenues being less than the revenue estimates upon which the appropriations were based." MO. CONST. art. IV, section 27.3. The Public Defender argues that the Governor subverted the intent of the amendments by labeling the withholding as control of the rate when, in fact, it was a permanent reduction. It argues that SAM II, the state's official financial system, indicated that the Public Defender was scheduled to receive only $1 million of the $4.5 million budget increase in four equal quarterly installments of $250,000. It further argues that the Governor has a history of claiming that withholds are only rate controls but then later proclaiming them to be permanent reductions after the fiscal year.
By its nature, the rate control provision of article IV, section 27 allows the Governor to control the cash flow of an appropriation as revenue comes into the state throughout the fiscal year. If the actual revenues are less than the revenue projections upon which the appropriation is based, the Governor can then permanently reduce the expenditure below the appropriation under the expenditure reduction provision of section 27. While SAM
*378 II may have shown the expenditure schedule for $1 million of the budget increase for the Public Defender, nothing in the Public Defender's pleadings showed if or how SAM II accounts for expenditures that are restricted or withheld during the fiscal year. In his proclamation, the Governor notified the General Assembly that the rate of expenditure for the appropriation for the Public Defender is not in equal quarterly allotments, the sum of which shall be equal to the amount of the appropriation. The Public Defender's pleadings did not demonstrate that the Governor's withholding or restriction of $3.5 million from its office was in fact a permanent reduction. And, as discussed in Schweich , before the end of the fiscal year, it could not be known whether the withholding to temporarily control the rate of expenditures would become permanent or whether actual revenues would be less than revenue estimates by the end of the fiscal year. The Public Defender's challenges in Counts I, II, and IV to the Governor's authority to reduce expenditures were, therefore, premature, and the trial court should have dismissed the counts.
The parties agree, however, that as of the end of the fiscal year, June 30, 2017, it became known that the actual revenues were less than the revenue estimates and the withholding constituted a permanent expenditure reduction, therefore, those claims are now ripe. In some cases, events occurring after the trial court's judgment may be properly considered in weighing a ripeness claim. Lower Colo. River Auth. v. Papalote Creek II, L.L.C. , 858 F.3d 916, 926 (5th Cir. 2017). See Blanchette v. Conn. Gen. Ins. Corps. , 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) ("[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern."). "In the typical situation in which subsequent events support a ripeness finding, the underlying merits are part of the case, and the appellate court (or the district court on remand) can evaluate the merits in light of the fact that the case is now ripe." Lower Colo. River Auth. , 858 F.3d at 926. Such is the case here. The underlying merits were fully argued by the parties and decided by the trial court. This court will, therefore, review the merits of Counts I, II, and IV below.
The trial court did dismiss Count III based on ripeness, and the Public Defender contends in point four that that decision was erroneous. Count III challenged the Governor's authority to control the rate of expenditures during the period of appropriation alleging that the effect of the Governor's withholding was not to control the timing of the distributions to the Public Defender but to permanently deny distribution of the appropriation.[3] This issue and whether it was ripe in the trial court or now on appeal are, however, moot. "A cause becomes moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. When an event occurs which renders a decision unnecessary, the appeal will be dismissed." Mo. Mun. League v. State , 465 S.W.3d 904, 906 (Mo. banc 2015) (internal quotes and citation omitted). With the close of the 2017 fiscal year and the parties' agreement that the withholding constituted a permanent expenditure *379 reduction, a decision regarding the Governor's authority to control the rate of expenditures is unnecessary. Any decision on such issue would have no practical effect upon any existing controversy. The Public Defender's fourth point regarding Count III of its petition is, therefore, dismissed.
Separation of Powers
In its first point on appeal, the Public Defender contends that the trial court erred in granting judgment on the pleadings on Count IV because the withholding violated the separation of powers doctrine in article II, section 1 of the Missouri Constitution. The Missouri Constitution declares:
The powers of government shall be divided into three distinct departments-the legislative, executive, and judicial-each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.
MO. CONST. art. II, § 1. The separation of powers doctrine is vital to our form of government because it prevents the abuses that can flow from centralization of power. Weinstock v. Holden , 995 S.W.2d 408, 410 (Mo. banc 1999). Two broad categories of acts violate the constitutional mandate of separation of powers. State Auditor v. Joint Comm. on Legislative Research , 956 S.W.2d 228, 231 (Mo. banc 1997). One branch may interfere impermissibly with another's performance of its constitutionally assigned power, or alternatively, one branch may assume a power that more properly is entrusted to another. Id.
"While it was not the purpose of the Constitution to make a total separation of these three powers, each branch of government ought to be kept as separate from and independent from each other as the nature of free government will admit." Weinstock , 995 S.W.2d at 411. "In practice, the functional lines between the two political departments are not hard, impenetrable ones. There is a necessary overlap between the functions of the departments of government.... But the constitution does not permit one department to exercise the powers reserved for the other." Joint Comm. on Legislative Research , 956 S.W.2d at 231. "[T]he proper focus of a separation of powers issue is on the powers involved, not the functions. " Asbury v. Lombardi , 846 S.W.2d 196, 200 n.6 (Mo. banc 1993).
The Public Defender argues that it is an independent department of the judicial branch as set forth in section 600.019.1 and the withholding impermissibly interfered with its performance of its constitutional function to defend indigents charged with crimes.
Both the United States and Missouri Constitutions guarantee criminal defendants a right to counsel. State ex rel. Mo. Public Defender Comm'n v. Pratte , 298 S.W.3d 870, 874 (Mo. banc 2009). States must furnish counsel to an indigent accused of crime. State v. Green , 470 S.W.2d 571, 572 (Mo. banc 1971) (citing Gideon v. Wainwright , 372 U.S. 335, 341, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ). To meet this requirement, the General Assembly created an elaborate public defender system to provide legal services to indigent defendants. State ex rel. Mo. Public Defender Comm'n v. Waters , 370 S.W.3d 592, 606 (Mo. banc 2012) ; § 600.011 et seq. , RSMo 2016. Section 600.019.1 provides, "The 'Office of State Public Defender' is hereby created and established as an independent department of the judicial branch of state government."
*380 The Missouri Constitution provides, "The judicial power of the state shall be vested in a supreme court, a court of appeals consisting of districts as prescribed by law, and circuit court." MO. CONST. art. V, § 1. "Judicial power ... is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." Muskrat v. United States , 219 U.S. 346, 356, 31 S.Ct. 250, 55 L.Ed. 246 (1911) (internal quotes and citation omitted). See also Asbury , 846 S.W.2d at 200 ("The quintessential power of the judiciary is the power to make final determinations of questions of law."); State ex rel. Pulitzer Pub. Co. v. Coleman , 347 Mo. 1238, 152 S.W.2d 640, 646 (Mo. banc 1941) ("The judicial power granted to the courts by the constitution is the power to perform what is generally recognized as the judicial function-the trying and determining of cases in controversy."), abrogated in part on other grounds by Bloom v. Illinois , 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) ; Harris v. Pine Cleaners, Inc. , 274 S.W.2d 328, 333 (Mo. App. 1954) ; Judicial Power , BLACK'S LAW DICTIONARY (10th ed. 2014)("The authority vested in courts and judges to hear and decide cases and to make binding judgments on them; the power to construe and apply the law when controversies arise over what has been done or not done under it.").
Despite the General Assembly's designation of the Public Defender as an independent department of the judicial branch, the Public Defender does not exercise judicial power in representing indigent defendants. It does not try and decide cases in controversy and pronounce judgments on them.[4] Because the Public Defender does not exercise judicial power, a withholding of expenditures to it by the Governor (the executive) does not violate the separation of powers doctrine. The trial court did not err in granting judgment on the pleadings in favor of the Governor on Count IV. Point one is denied.
Applicability of Expenditure Reduction Provision
In its second and third points on appeal, the Public Defender contends that the trial court erred in granting judgment on the pleadings on Counts I and II. It argues that the withholding violated the expenditure reduction provision of article IV, section 27 because the Public Defender is not a state agency within the meaning of that provision and the withholding did not apply to the state as a whole.
Article IV, section 27.1, adopted in the Missouri Constitution of 1945, allows the Governor to "reduce the expenditures of the state or any of its agencies below their appropriations whenever the actual revenues are less than the revenue estimates upon which the appropriations were based." (emphasis added). The provision does not define state agency, therefore, rules of construction are used to determine meaning. Mo. Prosecuting Attorneys v. Barton Co. , 311 S.W.3d 737, 741 (Mo. banc 2010). In construing a constitutional provision, the same rules used for statutory construction apply, except the former are given a broader construction due to their more permanent character. Id. The primary goal in interpreting a provision of the constitution is to ascribe to the *381 words of the provision the meaning that the people understood them to have when the provision was adopted. Id. "The framers of the Constitution and the people who adopted it must be understood to have employed words in their natural sense, and to have intended what they have said. This is but saying that no forced or unnatural construction is to be put upon their language." Wenzlaff v. Lawton , 653 S.W.2d 215, 216 (Mo. banc 1983) (internal quote and citation omitted). "As to the 1945 constitution, this Court has consistently given words used in that organic document their plain, ordinary meaning in preference over professionally-accepted, technical definitions." Joint Comm. on Legislative Research , 956 S.W.2d at 232. "[The] common understanding of language reflects the common sense of the People." Akin v. Mo. Gaming Comm'n , 956 S.W.2d 261, 263 (Mo. banc 1997).
The plain and ordinary meaning of a word is found in the dictionary. Id. Webster's New International Dictionary was the dictionary in use at the time the provision was written. It defined "agency" as "[f]aculty or state of acting or of exerting power; action; instrumentality." Agency , WEBSTER'S NEW INTERNATIONAL DICTIONARY (2nd ed. 1934). The 1951 edition of Black's Law Dictionary defines "governmental agency" as "a subordinate creature of the sovereign created to carry out a governmental function."Governmental Agency , BLACK'S LAW Dictionary (4th ed. 1951). The more recent Webster's Third New International Dictionary gives a similar definition. It defines "agency" as "a person or thing through which power is exerted or an end is achieved: INSTRUMENTALITY, MEANS" and "a department or other administrative unit of government." Agency , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged ed. 1993). "When the word 'any' is used in a constitutional provision, its meaning is all-comprehensive, and is equivalent to 'every.' " State ex rel. Sayad v. Zych , 642 S.W.2d 907, 911 (Mo. banc 1982) (internal quotes and citation omitted).
The Public Defender asserts that the term state agency includes only executive branch administrative agencies or entities, but such assertion is not supported under the definitions above. Under those definitions, a state agency is an instrumentality of the state through which it acts or its power is exerted. The meaning of the phrase "the state or any of its agencies" is broad and unrestrictive and includes every entity through which the state acts. It is not limited to executive department administrative agencies.
Such definition is consistent with other constitutional provisions in Article IV, which governs the executive department. " 'In construing individual sections, the constitution must be read as a whole, considering other sections that may shed light on the provision in question.' " Pestka v. State , 493 S.W.3d 405, 409 (Mo. banc 2016) (quoting State ex rel. Mathewson v. Bd. of Election Comm'rs of St. Louis Co. , 841 S.W.2d 633, 635 (Mo. banc 1992) ). "[I]n the absence of a contrary intention the same meaning attaches, or is presumed to attach, to a given word or phrase repeated in a constitution, whenever it occurs therein." State ex rel. Mathewson , 841 S.W.2d at 636 (internal quotes and citation omitted).
Article IV, section 13, requires the state auditor to "post-audit the accounts of all state agencies. " (emphasis added). Historically, the state auditor has audited the accounts of agencies in every branch of government including the Public Defender. See, e.g., MO. STATE AUDITOR , GENERAL ASSEMBLY AND SUPPORTING FUNCTIONS SENATE , AUDIT REPORT No. 2016-070 (2016);
*382 MO. STATE AUDITOR , JUDICIARY SUPREME COURT OF MISSOURI , AUDIT REPORT No. 2015-064 (2015); MO. STATE AUDITOR , DEPARTMENT OF CORRECTIONS , AUDIT REPORT No. 2016-010 (2015); MO. STATE AUDITOR , MISSOURI STATE PUBLIC DEFENDER , AUDIT REPORT No. 2012-129 (2012). This longstanding practice undermines the Public Defender's contention that only entities of the executive branch constitute state agencies as that term is in used in article IV. See N.L.R.B. v. Noel Canning , --- U.S. ----, 134 S.Ct. 2550, 2559, 189 L.Ed.2d 538 (2014) (long settled and established practice of the government is entitled to great regard in determining the construction of a constitutional provision).
Furthermore, where Article IV intends to limit the term agency to executive branch administrative agencies, it specifically does so. Article IV, section 12, which sets out the composition of the executive department, provides in pertinent part, "Unless discontinued all present or future boards, bureaus, commissions and other agencies of the state exercising administrative or executive authority shall be assigned by law or by the governor as provided by law to the office of administration or to one of the fifteen administrative departments to which their respective powers and duties are germane." Article IV, section 16, which recognizes the authority of the executive branch to issue regulations, provides, "All rules and regulations of any board or other administrative agency of the executive department, except those relating to its organization and internal management, shall take effect no less than ten days after the filing thereof in the office of the secretary of state." To hold that the term state agency in article IV, section 27 is limited to executive branch administrative agencies as urged by the Public Defender would render the modifying clause "exercising administrative or executive authority" in section 12 and the modifiers "administrative" and "of the executive department" in section 16 wholly redundant and superfluous. A court must assume that every word contained in a constitutional provision has effect and meaning and is not mere surplusage. State v. Honeycutt , 421 S.W.3d 410, 415 (Mo. banc 2013). Had the drafters of the constitution wished to limit the term state agency in Article IV, section 27 to executive branch administrative agencies, they could have used narrowing language to that effect as they did in sections 12 and 16.
The Public Defender was created to discharge the state's constitutional obligation to provide counsel to indigent criminal defendants. See State ex rel. Marshall v. Blaeuer , 709 S.W.2d 111, 112 (Mo. banc 1986) ( [T]he public defender system had its genesis in this Court's opinion in State v. Green , 470 S.W.2d 571 (Mo. banc 1971), wherein it was held that it was the duty of the State to provide legal services to 'an indigent accused of a crime.' "). It is an instrumentality of the state through which the state performs its constitutional duty to represent indigent criminal defendants. As such, it is a state agency under article IV, section 27. The second point is denied.
The Public Defender next asserts that the withholding violated article IV, section 27 because the withholding did not apply to the state as a whole. It contends that because it is not a state agency, the Governor was only authorized "to reduce the expenditures of the state", which requires proportionate reductions for each branch. It argues that it was targeted for a substantially disproportionate reduction.
The Public Defender recognizes that the expenditure reduction provision of article IV, section 27.1 is stated in the disjunctive, allowing the Governor to reduce the expenditures either of the state or any state agencies.
*383 Council Plaza Redevelopment Corp. v. Duffey , 439 S.W.2d 526, 532 (Mo. banc 1969) (the disjunctive "or" in its ordinary sense means an alternative and corresponds with the word "either"). As discussed above, the Public Defender is a state agency as the term in used in the provision. The Governor had the authority to reduce the expenditures of the Public Defender below their appropriations without reducing the expenditures of the state as a whole. Nothing in article IV, section 27.1 requires the reduction of expenditures of state agencies to be proportionate. Point three is denied.
The Public Defender's appeal with respect to Count III of its petition (point four) is dismissed. The remainder of the trial court's judgment is affirmed.
All concur.

For clarity and ease of reading, the term "Public Defender" is used in this opinion to reference the Appellants, who include Michael Barrett, in his capacity as Director of the Office of State Public Defender, the Missouri Public Defender Commission, and H. Riley Bock, Charles Jackson, Craig Chval, Douglas Copeland, and A. Crista Hogan, in their official capacities as Commissioners of the Missouri Public Defender Commission. The term is also used to reference the Office of the State Public Defender itself.

"Governor" refers to Jeremiah W. Nixon, in his capacity as Governor of the State of Missouri, and his successor, Eric R. Greitens, in his capacity as Governor of the State of Missouri, who was substituted after this appeal was filed.

The Public Defender argues that the essence of Count III was that the Governor violated article IV, section 27.2 and 27.3 by not accurately stating what his withholding really was. The petition, however, does not allege that the Governor failed to comply with the requirements in those subsections for notifying the General Assembly by proclamation.

The Public Defender only claims to exercise "judicial power" because the General Assembly chose to designate it as "an independent department of the judicial branch of state government." § 600.019.1. Notably, in its briefing, the Public Defender acknowledges that "Missouri's General Assembly could have [instead] placed the Public Defender in the Executive branch." This admission further establishes that the Public Defender does not exercise judicial power assigned by the Missouri Constitution to the judicial department.