Karen King Mitchell, Chief Judge
Christopher Fields appeals the grant of the Missouri Board of Probation and Parole's motion for judgment on the pleadings in his declaratory judgment action, *14 which sought a declaration that the Board improperly determined that Fields was required to serve a minimum of 85% of his nine-year sentence for involuntary manslaughter before becoming eligible for parole. Fields raises two points on appeal: (1) Fields claims he is entitled to parole as a result of a 2017 amendment to § 565.024 that removed language mandating that a person convicted serve at least 85% of the sentence imposed before becoming eligible for parole; and (2) Fields is not otherwise required to serve a minimum of 85% of his sentence under § 558.019.3 because he is not a "dangerous offender." Because Fields's claim is barred by § 1.160, the trial court did not err in granting the Board's motion for judgment on the pleadings. Its judgment is affirmed.
Background
On December 30, 2012, Fields was involved in a vehicular crash wherein an occupant of the car Fields struck was killed. Fields was charged with first-degree involuntary manslaughter in violation of § 565.024.1(3)(a),[1] leaving the scene of a motor vehicle accident in violation of § 577.060.1, and driving while intoxicated in violation of § 577.010. On March 21, 2014, Fields entered an Alford plea[2] pursuant to a plea agreement with the State wherein the State agreed to dismiss Counts II and III and recommend a sentence of nine years for involuntary manslaughter.
At the time of Fields's offense, § 565.024.1(3)(a) provided,
A person commits the crime of involuntary manslaughter in the first degree if he ... [w]hile in an intoxicated condition operates a motor vehicle ... in this state, and, when so operating, acts with criminal negligence to ... [c]ause the death of any person not a passenger in the vehicle ... operated by the defendant.
§ 565.024.1(3)(a). The statute further provided that "[i]nvoluntary manslaughter in the first degree under subdivision (3) of subsection 1 of this section is a class B felony," and "[f]or any violation of subdivision (3) of subsection 1 of this section, the minimum prison term which the defendant must serve shall be eighty-five percent of his ... sentence." § 565.024.2.
On May 13, 2014, Senate Bill 491, which revised Missouri's Criminal Code effective January 1, 2017, became law by virtue of the Missouri Constitution, Article III, § 31.[3] Section 565.024 was among the sections repealed and replaced by Senate Bill 491. The revised version of § 565.024 provided: "A person commits the offense of involuntary manslaughter in the first degree if he or she recklessly causes the death of another person." § 565.024.1, RSMo Supp. 2017. It further provided that "[t]he offense of involuntary manslaughter in the first degree is a class C felony." § 565.024.2, RSMo Supp. 2017. The subsection mandating a minimum prison term of 85% of the defendant's sentence was deleted in the revised version.
On May 16, 2014, Fields received a notice from the Board stating, "You have *15 been sentenced to nine (9) years for A[lford] P[lea]: Involuntary Manslaughter First-Veh Intoxication. In accordance with section 565.024 RSMo, you are not eligible for release until serving 85% of your sentence. You have been scheduled for release from confinement on 10/15/2021."[4]
The revised version of § 565.024 became effective January 1, 2017. On October 17, 2017, Fields filed a petition for declaratory judgment challenging the Board's determination that Fields was required to serve 85% of his sentence before becoming parole eligible. Fields argued that the revised version of § 565.024, which no longer contained a mandatory minimum prison term, should be applied retroactively to his sentence and, as a result, he should not be required to serve a mandatory minimum of 85% of his nine-year sentence.
After filing an answer denying that Fields was entitled to a declaratory judgment, the Board filed a motion for judgment on the pleadings, arguing that § 1.160 required Fields's punishment to be determined by the version of § 565.024 in effect at the time of his offense.[5] Alternatively, the Board argued that, even under the 2017 revisions, Fields was still required to serve 85% of his sentence because his offense constituted a "dangerous felony" under § 556.061(19).
On February 26, 2018, the court granted the Board's motion, determining that "§ 1.160 requires that Fields'[s] punishment [be] determined by the law in effect at the time of the crime." The court further determined that, even under the current statutes, Fields would have to serve 85% because his offense qualified as a "dangerous felony." Fields appeals.
Standard of Review
"The appellate court reviews the trial court's grant of a motion to dismiss or a motion for judgment on the pleadings de novo. " Barrett v. Greitens , 542 S.W.3d 370, 375 (Mo. App. W.D. 2017). "A motion for judgment on the pleadings is properly granted if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law." Id. at 376. "The reviewing court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it; therefore, the trial court's judgment will be affirmed if it is correct on any ground supported by the record regardless of whether the trial court relied on that ground." Id.
Analysis
Fields raises two points on appeal. In his first point, he challenges the trial court's determination that § 1.160 precludes any retroactive application of the current version of § 565.024. In his second point, he challenges the trial court's determination that his offense constitutes a "dangerous felony," subjecting him to an 85% mandatory minimum under the current laws, regardless of the changes to § 565.024. The Board concedes that Fields's second point is meritorious and that the trial court's determination that Fields's offense constituted a "dangerous *16 felony" is legally erroneous. The Board argues, however, that the trial court's application of § 1.160 was correct and, therefore, its judgment should be affirmed. In light of the Board's concession of error on Fields's second point, we need not address it and, instead, focus solely on whether § 1.160 precludes Fields's requested relief.
At the time of Fields's offense, first-degree involuntary manslaughter under § 565.024 could be committed in no fewer than seven different ways.[6] The manner of the offense to which Fields pled guilty is found in § 565.024.1(3)(a). Under that subdivision, a person commits first-degree involuntary manslaughter if,
[w]hile in an intoxicated condition[, he] operates a motor vehicle ... in this state, and, when so operating, acts with criminal negligence to ... [c]ause the death of any person not a passenger in the vehicle ... operated by the defendant, including the death of an individual that results from the defendant's vehicle leaving a highway, as defined by section 301.010, or the highway's right-of-way.
§ 565.024.1(3)(a). Subsection 2 of § 565.024 identified the various classifications of first-degree involuntary manslaughter, depending upon the manner of commission. § 565.024.2, RSMo 2008. Section 565.024.2 provided that Fields's manner of commission constituted a class B felony and that "the minimum prison term which the defendant must serve shall be eighty-five percent of his ... sentence." Id. Neither of these provisions applied to other manners of committing first-degree involuntary manslaughter. Subsection 2 also provided an enhanced penalty for a person convicted multiple times under subdivision (3), raising the offense to a class A felony upon a second or subsequent violation. Id.
When Senate Bill 491 repealed § 565.024, it replaced it with a new § 565.024, and the new statute was considerably less detailed. The revised version of § 565.024 provided: "A person commits the offense of involuntary manslaughter in the first degree if he or she recklessly causes the death of another person." § 565.024.1, RSMo Supp. 2017. Subsection 2 was also greatly abbreviated, providing only that "[t]he offense of involuntary manslaughter in the first degree is a class C felony." § 565.024.2, RSMo Supp. 2017.
*17 Because the revised version of § 565.024.2 no longer required a defendant to serve a mandatory minimum of 85% of his sentence before becoming parole eligible, Fields sought to retroactively apply only this aspect of the new statute to his sentence. In doing so, however, Fields did not address the facts that the new statute not only carried a higher culpable mental element (recklessness instead of criminal negligence) but also used a lower classification of the offense (class C felony instead of class B). He further failed to acknowledge the vastly different elements of the crime under the 2008 version and the 2017 version. It is unclear under what authority Fields believes the lower court could have selectively applied only part of the new statute retroactively without consideration for the others. Courts must "read[ ] the statutes ... in their entirety rather than piecemeal." Vill. N., Inc. v. State Tax Comm'n of Mo. , 799 S.W.2d 197, 201 (Mo. App. E.D. 1990).
In any event, Fields's proposed retroactive application is barred by § 1.160, which provides:
No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to ... the time when any statutory provision is repealed or amended shall be affected by the repeal or amendment, but the trial and punishment of all such offenses ... shall be had, in all respects, as if the provision had not been repealed or amended, except that all such proceedings shall be conducted according to existing procedural laws.
"The plain language of § 1.160 indicates that its purpose was to fix the penalties under the criminal statutes as of the date the offense was committed, so that as a general rule, even if a statute dealing with sentencing, imprisonment, or probation is subsequently amended, the offender does not receive the benefit of the amendment." Prapotnik v. Crowe , 55 S.W.3d 914, 918 (Mo. App. W.D. 2001) ; see also State v. Williams , 936 S.W.2d 828, 830-31 (Mo. App. W.D. 1996) ("As a general rule, penalties imposed for the violations of criminal laws are to be governed by statutes in effect at the time of the commission of the crimes.").
In determining whether § 1.160 bars retroactive application of an existing statute, courts use a two-prong inquiry. First, we must determine whether the existing statute is a new provision or if it repealed or amended a previously existing provision. State ex rel. Nixon v. Russell , 129 S.W.3d 867, 870 (Mo. banc 2004) ; State v. Sumlin , 820 S.W.2d 487, 490 (Mo. banc 1991) (both distinguishing between new provisions and repealed or amended provisions for purpose of applying § 1.160). If the existing statute is a new provision, then it is outside the scope of § 1.160, and retroactive application is not barred by § 1.160.[7] Russell , 129 S.W.3d at 870. But, if the existing statute repealed or amended a previously existing provision, then we must determine whether the repealed or amended provision affects the prosecution, penalty, or punishment of the offense at issue. Id. at 870-71. If the repealed or amended provision does not affect the prosecution, penalty, or punishment, then it again falls outside the scope of § 1.160, and retroactive application is not barred by § 1.160.[8] Id. at 871. If, on the other hand, the repealed or amended provision does affect the prosecution, penalty, or punishment of the offense at issue, then it is within § 1.160's bar on retroactive application *18 and cannot be applied retroactively unless it is merely procedural. See Prapotnik , 55 S.W.3d at 918 (discussing the procedural exception to application of § 1.160).
Here, Fields seeks to take advantage of the legislature's decision to repeal an existing provision, rather than relying on a newly enacted provision; thus, the first prong of the inquiry counsels against retroactive application. Under the second prong, we must determine whether the 85% mandatory minimum prison term provision of § 565.024.2 affected the penalty or punishment of first-degree involuntary manslaughter as it existed at the time of Fields's offense.
Numerous decisions indicate that a mandatory-minimum-prison-term provision located within the statute defining the offense that bars parole eligibility for a definite period of time-like the one at issue here-is part of the penalty or punishment for that offense. See State v. Pribble , 285 S.W.3d 310, 314 (Mo. banc 2009) (identifying, as a "penalty," § 566.151.3's requirement that a convicted defendant serve a minimum of five years "without eligibility for parole, probation, conditional release, or suspended imposition or execution of sentence"); McDermott v. Mo. Bd. of Prob. & Parole , 61 S.W.3d 246, 248 (Mo. banc 2001) (declaring "frivolous" the argument that "the parole eligibility restrictions contained in section 571.015 ... do not relate to the 'punishment' for the crime of armed criminal action."); Short v. Mo. Bd. of Prob. & Parole , 456 S.W.3d 72, 78 (Mo. App. W.D. 2015) ("the prohibition against parole eligibility is contained in the penalties subsection of the statute, immediately following the legislature's classifications of the offense for punishment purposes. The implication is that the prohibition against parole eligibility refers back to those prescribed punishments....").
Fields argues that § 1.160 does not apply because parole eligibility does not change an offender's sentence and, therefore, does not affect the punishment of the offense subject to the savings statute. In making this argument, he relies on State ex rel. Nixon v. Russell , 129 S.W.3d 867 (Mo. banc 2004). In Russell , the Court examined whether a newly enacted statute that allowed certain offenders to petition the sentencing court "to serve the remainder of the sentence on 'probation, parole, or other court-approved alternative sentence' ... applie[d] to offenders sentenced [before] the effective date of [the statute]." Id. at 868 (quoting § 558.016.8, RSMo Supp. 2003). The State argued that § 1.160 barred application of the new statute to the offender's sentence. Id. at 870. The Court rejected this argument, however, noting that, "[s]ection 558.016.8 is a new statutory provision; it does not repeal or amend any previously existing statute." Id.
Though Fields is correct that the Russell Court held, generally, that "[t]he granting of parole does not reduce the sentence imposed," Russell , 129 S.W.3d at 870, the Court did not address a situation where the restriction on parole eligibility was within the penalty provision of the statute defining the offense.[9] As such, Russell does not answer the question we are faced with: Does a parole eligibility provision within a statute defining an offense affect the prosecution, penalty, or punishment *19 of that offense for purposes of § 1.160?
Our research did not reveal any Missouri cases addressing this precise issue, but it has been addressed by the United States Supreme Court with respect to a federal savings statute similar to § 1.160.[10] Warden, Lewisburg Penitentiary v. Marrero , 417 U.S. 653, 658, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). "Although ... the precise time at which the offender becomes eligible for parole is not part of the sentence," where the statute defining the offense precludes parole eligibility for a mandatory period of time, "it is implicit in the terms of the sentence" and, thus, affects the prosecution. Id. This is because sentencing decisions under these circumstances are likely made with the offense-specific parole eligibility restriction in mind. Id. For instance, in Fields's case, the prosecutor was likely aware of the 85% requirement when making the plea offer to dismiss two of the charges and recommend a nine-year sentence. Had the prosecutor believed that Fields might serve only one-third of the sentence imposed (as required by the general parole eligibility statute), rather than 85% (as required by the version of § 565.024 in effect at the time of Fields's offenses), the prosecutor may very well have refused to dismiss any charges or may have argued for a sentence closer to fifteen years (the maximum available for a class B felony).
In sum, because Fields's claim is premised upon an amended statute that repealed a provision dealing with punishment for his offense, it falls squarely within the scope of § 1.160's bar on retroactive application.[11] Accordingly, the trial court committed no error in granting the Board's motion for judgment on the pleadings.[12]
Conclusion
The trial court's grant of the Board's motion for judgment on the pleadings is affirmed.
Mark D. Pfeiffer and Cynthia L. Martin, Judges, concur.

All statutory references are to the Revised Statutes of Missouri, Supp. 2008, unless otherwise noted.

North Carolina v. Alford , 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

"If any bill shall not be returned by the governor within the time limits prescribed by this section it shall become law in like manner as if the governor had signed it." Mo. Const. art. III, § 31.

The notice included the caveat: "THIS DECISION IS NOT SUBJECT TO APPEAL." In this appeal, Fields does not challenge his inability to appeal the parole eligibility date.

Section 1.160 provides, in pertinent part: "No ... prosecution commenced or pending previous to ... the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the ... punishment of all such offenses ... shall be had, in all respects, as if the provision had not been repealed or amended, except that all such proceedings shall be conducted according to existing procedural laws."

A person commits the crime of involuntary manslaughter in the first degree if he or she:
(1) Recklessly causes the death of another person; or
(2) While in an intoxicated condition operates a motor vehicle or vessel in this state and, when so operating, acts with criminal negligence to cause the death of any person; or
(3) While in an intoxicated condition operates a motor vehicle or vessel in this state, and, when so operating, acts with criminal negligence to:
(a) Cause the death of any person not a passenger in the vehicle or vessel operated by the defendant, including the death of an individual that results from the defendant's vehicle leaving a highway, as defined by section 301.010, or the highway's right-of-way; or vessel leaving the water; or
(b) Cause the death of two or more persons; or
(c) Cause the death of any person while he or she has a blood alcohol content of at least eighteen-hundredths of one percent by weight of alcohol in such person's blood; or
(4) Operates a motor vehicle in violation of subsection 2 of section 304.022, and when so operating, acts with criminal negligence to cause the death of any person authorized to operate an emergency vehicle, as defined in section 304.022, while such person is in the performance of official duties;
(5) Operates a vessel in violation of subsections 1 and 2 of section 306.132, and when so operating acts with criminal negligence to cause the death of any person authorized to operate an emergency watercraft, as defined in section 306.132, while such person is in the performance of official duties.
§ 565.024.1, RSMo 2008.

Retroactive application may be affected by other laws or considerations not relevant to this opinion.

See footnote 7, supra.

Unlike the provision at issue here, the statute analyzed in Russell was a general parole eligibility statute, not specific to any particular offense. The Court even specifically noted that the amendment at issue in that case did not "alter the law creating the offense," State ex rel. Nixon v. Russell , 129 S.W.3d 867, 870 (Mo. banc 2004), thus implying that, if it had, the outcome may have been different.

Though there are many Missouri cases analyzing the application of § 1.160 that discuss whether a statutory change in punishment is located within the law creating the offense as opposed to a general law, they were analyzing former § 1.160(2), which provided an additional exception to the bar on retroactivity where there was a change to "the law creating the offense prior to original sentencing" that benefited the offender. See, e.g., State ex rel. Nixon v. Kelly , 58 S.W.3d 513, 516 (Mo. banc 2001). But § 1.160 was amended in 2005, and the exception provided in § 1.160(2) was deleted. State v. Maples , 306 S.W.3d 153, 157 (Mo. App. W.D. 2010).

Fields does not argue that the repealed provision is procedural in any way. Accordingly, we need not address whether the lone exception remaining in § 1.160 is applicable.

Because we resolve Fields's appeal on the first point, we need not address the second point.