

# Missouri Court of Appeals

## Southern District

### Division Two

DWIGHT LAUGHLIN, )
)
         Respondent, )
)
  vs. )  No. SD35589
)
DEWAYNE PERRY, and )  FILED: June 10, 2019
ELLEN FLOTTMAN, )
)
         Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

#### Honorable James V. Nichols, Judge

#### **AFFIRMED**

A Missouri circuit court tried, convicted, and sentenced Dwight Laughlin to 40 years in prison for burglarizing and damaging a U.S. post office in Neosho. Seventeen years later, our supreme court granted Laughlin's *pro se* petition, voided his convictions, and discharged him because "the United States ha[d] *exclusive* jurisdiction to hear cases involving offenses committed on that federal property." ***State ex rel. Laughlin v. Bowersox***, 318 S.W.3d 695, 697 (Mo. banc 2010).

Laughlin sued Appellants, his trial and appellate public defenders, for negligently failing to assert that jurisdictional challenge as he had asked them to do in 1993-95.[1] Attorney Arthur Benson offered 56 transcript pages of trial testimony as an expert witness and opined, consistent with the jury instructions

---

[1] Laughlin dismissed or was unsuccessful on his claims against other attorneys. Those claims are not at issue in this appeal.

and Laughlin's claims, that Appellants had been negligent. The jury agreed and rendered a $600,000 verdict.

On appeal, Appellants raise two points. The latter fails summarily, so we take it first.

## Submissibility

To determine if Laughlin presented a submissible case, we must ignore all conflicting evidence and inferences. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). Appellants cite *Fleshner* for this rule, but ignore it. Point 2 charges that "no evidence was adduced in support of the essential element of negligence," then cites only *Appellants'* evidence that we must ignore, dooming the point *ab initio*. Worse yet, Point 2's argument acknowledges Benson's expert testimony of negligence, but asserts that Appellants' evidence proves Benson wrong. "[I]n seeing if any evidence supports a judgment, contrary proof is irrelevant. And if evidence does support the judgment, no amount of counter-proof erases it." *Smith v. Great American Assur. Co.*, 436 S.W.3d 700, 705 (Mo.App. 2014). Point denied.

## Official Immunity

Appellants also urge that public defenders should enjoy official immunity from malpractice claims. This is an open question, as Appellants acknowledge, despite having come up in three opinions by our Western District colleagues:

> 1. *Johnson v. Schmidt*, 719 S.W.2d 825 (Mo.App. 1986), dismissed a malpractice case as premature without reaching the official-immunity issue (*id*. at 826), noting also that "[i]f appellant had been successful in his claim, then payment of those damages would have to be made from the State Legal Defense Fund, § 105.711, RSMo Supp.1984." *Id*. at 828.

> 2. *Costa v. Allen*, WD67378, 2008 WL 34735 (Mo.App. Jan. 2, 2008), extensively surveyed other jurisdictions, concluded that most did not recognize official immunity for public defenders (*id*. at *3-*5), reached the same result, and also observed that "Missouri does not have a blanket statutory immunity for state employees but rather provides financial protection for their acts under the State Legal Expense Fund." *Id*. at *4 n.5. This opinion was for naught after our supreme court took transfer and ruled on other grounds without deciding the immunity issue. *Costa v. Allen*, 274 S.W.3d 461, 463-64 & n.4 (Mo. banc 2008).

3.   Two years later, in **Kuehne v. Hogan**, 321 S.W.3d 337 (Mo.App. 2010), Judge Ellis separately opined that his court's prior **Costa** opinion, although of no precedential value, was in error (**id**. at 343-50 (Ellis, J., concurring)), and that most jurisdictions grant public defenders some sort of immunity "whether it be judicial immunity, statutory immunity, official immunity, or some variation thereof." **Id**. at 344 (Ellis, J., concurring).

We have not found or been cited to a later Missouri case on this issue. Before we address it anew, some further background is in order.

Missouri courts have recognized the doctrine of official immunity for more than 160 years. **Southers v. City of Farmington**, 263 S.W.3d 603, 610 (Mo. banc 2008)(citing **Reed v. Conway**, 20 Mo. 22 (1854)). "This judicially-created doctrine protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." **Id**. Official immunity is intended to shield "individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties," and permit them "to make judgments affecting public safety and welfare without concerns about possible personal liability." **Id**. at 611.[2]

Missouri's recognition of official immunity predates recognition of an accused's right to court-appointed counsel. At common law, a defendant had no right to counsel at public expense. **Powell v. Alabama**, 287 U.S. 45, 61 (1932). That changed when **Gideon v. Wainwright**, 372 U.S. 335 (1963), decreed that the Sixth Amendment requires federal *and* state courts to provide counsel for indigents. In Missouri, the bar shouldered this burden *gratis* until our supreme court served notice that it would not, after September 1, 1972, compel Missouri attorneys to discharge alone a constitutional duty owed by the state.[3] Legislation quickly followed establishing the Public Defender Commission and creating a blended system of local public-defender offices and appointed counsel programs.

---

[2] Some states view official immunity as an extension of sovereign immunity. *See, e.g.,* **Jacobi v. Holbert**, 553 S.W.3d 246, 252 (Ky. 2018). Not so in Missouri. "Sovereign immunity is uniquely applicable to a governmental entity and is not applicable to an individual public official who acts as an agent of the state." **Cottey v. Schmitter**, 24 S.W.3d 126, 128 (Mo.App. 2000).

[3] **State v. Green**, 470 S.W.2d 571, 573 (Mo. banc 1971).

***State ex rel. Missouri Pub. Def. Comm'n v. Pratte***, 298 S.W.3d 870, 875 (Mo. banc 2009).  That legislation did not address public-defender liability for negligence.[4]

Common law offered no immunity for public defenders, as such, because no such office or position existed at that time.  ***Tower v. Glover***, 467 U.S. 914, 921 (1984).  As a matter of federal common law, the Supreme Court unanimously rejected public-defender immunity in ***Ferri v. Ackerman***, 444 U.S. 193 (1979), but left states free to construe their laws differently.  "For when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity ...." ***Id***. at 198.

State-court results during that period were mixed.  Some rejected public-defender immunity.  *See, e.g.,* ***Spring v. Constantino***, 362 A.2d 871 (Conn. 1975)(later superseded by statute); ***Reese v. Danforth***, 406 A.2d 735 (Pa. 1979).  Others found that public defenders were state employees protected from liability under existing statutes.  *See, e.g.*, ***Vick v. Haller***, 512 A.2d 249 (Del. Super. Ct. 1986); ***Ramirez v. Harris***, 773 P.2d 343 (Nev. 1989); ***Bradshaw v. Joseph***, 666 A.2d 1175 (Vt. 1995).  Minnesota judicially extended immunity to public defenders on the basis of public policy.  ***Dziubak v. Mott***, 503 N.W.2d 771 (Minn. 1993).[5]

In the meantime, our legislature was comprehensively addressing state-employee liability.  In 1983, Missouri initiated the State Legal Expense Fund cited in ***Johnson*** and ***Costa***.  Via the Fund and § 105.711, "the General Assembly of the state of Missouri has chosen to defend and pay claims against state employees

---

[4] *Contrast* Tenn. Code Ann. § 8-14-109 which bars, in pertinent part, any suit against a public defender or employee "with a view to reach ... the funds or property of any public defender or its employees" for negligence arising from the execution of official duties.

[5] Today's national landscape seems little changed.  We find two later cases extending judicially-created immunity to public defenders – ***Jacobi***, *supra* note 2, and ***Harbeck v. Smith***, 814 F. Supp. 2d 608, 623 (E.D. Va. 2011)(predicting Virginia law) – but commentators still describe these as minority views.  "[T]he prevailing rule is that neither a court-appointed nor a privately retained lawyer has immunity from civil actions." 3 Legal Malpractice § 22:23 (2019 ed.).  "As a general rule, court-appointed counsel or public defenders are not immune from malpractice liability."  Prof. Resp. Crim. Def. Prac. 3d § 31:18 (2018). *See also* Annot., Public defender's immunity from liability for malpractice, 6 A.L.R.4th 774 (1981 & cum. supp.).

arising out of the performance of their official duties for the state." ***Cottey***, 24 S.W.3d at 129. Moreover, since 2005, § 105.711.5 has declared:

> The state legal expense fund shall be the exclusive remedy and shall preclude any other civil actions or proceedings for money damages arising out of or relating to the same subject matter against the state officer or employee, or the officer's or employee's estate. No officer or employee of the state or any agency of the state shall be individually liable in his or her personal capacity for conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state.

Particularly in light of what we just quoted, we can be brief. Appellants' § 105.711 and Fund protections render it unnecessary, and perhaps unwise, for us to add a duplicative judge-made immunity. The Attorney General has provided Appellants' defense and continues to do so, while the Fund stands to pay any final money judgment. ***Johnson***, 719 S.W.2d at 828.[6] Further, § 105.711.5 expressly declares Appellants not individually liable, precludes other proceedings against them, and substitutes the Fund as Laughlin's exclusive collection remedy.[7]

These provisions reflect a considered legislative balancing – the state voluntarily assumes the financial risk of employee negligence without destroying the rightful claims of injured victims via flat immunity. We are reluctant to overlay a second immunity that would hurt innocent victims, yet gain negligent public defenders nothing. Point denied. Judgment affirmed.

DANIEL E. SCOTT, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS

---

[6] Fund monies are available to pay "any amount required by any final judgment rendered by a court of competent jurisdiction" against state-agency employees in connection with official duties, except workers' compensation claims. § 105.711.2(2). *See also **Barrett v. Greitens***, 542 S.W.3d 370, 374 n.1, 382 (Mo.App. 2017)(Office of Public Defender is a state agency).

[7] We construe and consider all § 105.711 provisions together, seeking to harmonize and give each clause some meaning. *See **Wollard v. City of Kansas City***, 831 S.W.2d 200, 203 (Mo. banc 1992). As subsection 2 speaks of the Fund paying final judgments by courts of competent jurisdiction, we read subsection 5's "exclusive remedy" and related provisions as confining judgment-collection efforts to those against the Fund.